# EXHIBIT A

## 2018 CA 003335 B DOE 1, JANE et al Vs. GEORGE WASHINGTON UNIVERSITY et al RR

| | | | | | |
|---|---|---|---|---|---|
| **Case Type** 05/10/2018 | Civil II | **Case Status:** | Open | **File Date:** | |
| **Action:** 08/24/2018 | Complaint for Employment Discrimination (Non-MPA) Filed | **Status Date:** | 05/10/2018 | **Next Event:** | |

**All Information**    **Party**    **Event**    **Docket**    **Receipt**    **Disposition**

### Docket Information

| Date | Docket Text | Image Avail. |
|---|---|---|
| 05/10/2018 | Complaint for Employment Discrimination (Non-MPA) Filed   Receipt: 397795   Date: 05/14/2018 | |
| 05/10/2018 | eComplaint. Filed. Submitted. 05/10/2018 11:01. ncv. Attorney: KLAPROTH, BRENDAN JAMES (999360) JANE DOE 1 (Plaintiff); JANE DOE 2 (Plaintiff); JANE DOE 3 (Plaintiff); JANE DOE 4 (Plaintiff); JANE DOE 5 (Plaintiff); | Image |
| 05/14/2018 | Event Scheduled Event: Initial Scheduling Conference-60 Date: 08/24/2018   Time: 10:00 am Judge: RIGSBY, ROBERT R   Location: Courtroom 201 | |
| 05/14/2018 | Issue Date: 05/14/2018 Service: Summons Issued Method: Service Issued Cost Per: $  GEORGE WASHINGTON UNIVERSITY 2100 Pennsylvania Avenue, NW Suite 250 WASHINGTON, DC   20050 Tracking No: 5000203569  GEORGE WASHINGTON UNIVERSITY 2121 Eye Street NW WASHINGTON, DC   20050 Tracking No: 5000203570  RENNER, KYLE 2121 Eye Street NW WASHINGTON, DC   20050 Tracking No: 5000203571 | |
| 06/04/2018 | Notice of Acknowledgment of Service Filed.   Submitted 06/04/2018 11:08. jd Attorney: KLAPROTH, BRENDAN JAMES (999360) KYLE RENNER (Defendant); | Image |
| 06/04/2018 | Proof of Service Method   : Service Issued Issued    : 05/14/2018 Service   : Summons Issued Served    : 06/01/2018 Return    : 06/04/2018 On      : RENNER, KYLE Signed By : Kyle Renner  Reason    : Proof of Service Comment   :  Tracking #: 5000203571 | |
| 06/04/2018 | Notice of Acknowledgment of Service Filed.   Submitted 06/04/2018 11:12. jd Attorney: KLAPROTH, BRENDAN JAMES (999360) GEORGE WASHINGTON UNIVERSITY (Defendant); | Image |

| Date | Docket Text | | Image Avail. |
|------|-------------|---|------|
| 06/04/2018 | Proof of Service<br>    Method   : Service Issued<br>    Issued    : 05/14/2018<br>    Service   : Summons Issued<br>    Served   : 06/04/2018<br>    Return   : 06/04/2018<br>    On      : GEORGE WASHINGTON UNIVERSITY<br>    Signed By : Daniel I Prywes<br><br>    Reason    : Proof of Service<br>    Comment   :<br><br>    Tracking #: 5000203570 | | |

**Filed**
**D.C. Superior Court**
**05/10/2018 11:55AM**
**Clerk of the Court**

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

JANE DOE 1
c/o Brendan Klaproth
Klaproth Law PLLC
406 5th Street NW, Ste 350
Washington, DC 20001

JANE DOE 2
c/o Brendan Klaproth
Klaproth Law PLLC
406 5th Street NW, Ste 350
Washington, DC 20001

JANE DOE 3
c/o Brendan Klaproth
Klaproth Law PLLC
406 5th Street NW, Ste 350
Washington, DC 20001

JANE DOE 4
c/o Brendan Klaproth
Klaproth Law PLLC
406 5th Street NW, Ste 350
Washington, DC 20001

JANE DOE 5
c/o Brendan Klaproth
Klaproth Law PLLC
406 5th Street NW, Ste 350
Washington, DC 20001

    Plaintiffs.

     v.

GEORGE WASHINGTON UNIVERSITY
2121 Eye Street NW
Washington, DC 20050

    Serve: Mary Lynn Reed
          2100 Pennsylvania Ave NW
          Suite 250
          Washington, DC 20050

Civ. No.: **2018 CA 003335 B**

Klaproth Law
406 5TH Street NW
Suite 350
Washington, D.C. 20001
———
klaprothlaw.com

KYLE RENNER
2121 Eye Street NW
Washington, DC 20050

     Defendants.

## **COMPLAINT AND JURY DEMAND**

     Plaintiffs Jane Doe 1, Jane Doe 2, Jane Doe 3, Jane Doe 4, and Jane Doe 5 allege for their Complaint herein:

### **PRELIMINARY STATEMENT**

     1.     Imagine a workplace in America where a man could sexually assault three female coworkers, sexually harass and stalk eight other employees, and not only admit to this misconduct, but announce a public sexual rating system of the female employees he assaulted. Too far-fetched?  Well, that has been the workplace environment at the Institute for International Economic Policy ("IIEP") at George Washington University ("GW") over the past year.  Remarkably, GW knows all of this, as at least three student-employees have been raped, and eight others sexually harassed, stalked and tormented by Emerson Jones, a sexual predator.

     2.     The IIEP workplace became a nightmare, prison-like environment for the female employees working with Jones.  The women raped by Jones were forced to continue to work with him while he bragged to the other women about his non-consensual sexual encounters at the IIEP workplace.  He went so far as to publicly declare a sexual rating system for the women attacked and tormented by this psychopath.

     3.     The women have complained, but GW has taken no action to protect them. Instead, GW is providing safe harbor and refuge for Jones.

4.     GW has actual knowledge of Jones' crimes and sexual misconduct, yet it has taken no action to protect the female staff members. Even worse than GW's attempt to conceal the misconduct occurring on its campus workplace, GW retaliated against the Plaintiffs for complaining of the sexually hostile workplace and attempted to silence them.  In response to the hostile work environment, GW told the Plaintiffs not to come to work. Meanwhile, Jones continues to work at GW and prey on the young female students at GW, while the University has turned a blind eye to the hostile, dangerous work environment at IIEP.

5.     The extreme distress, humiliation, embarrassment and feeling of powerlessness the Plaintiffs have experienced in the face of such an injustice is not something that heals well with time. This is especially true because the women victimized by Emerson were also students of GW, a place where they should feel protected and safe. In reality, however, GW has placed the purported "rights" of the sexual predator over the safety, security, and rights of his victims.

6.     A university should be a place that fosters intellectual development, personal growth, builds confidence, and provides a student with the skills to confront the challenges of the world. GW has been no such place for Plaintiffs. Instead, Plaintiffs, all of whom are on financial aid and participating in a federal work study program through GW, have been subjected to a dangerous and sexually hostile workplace at GW. The parents of these eleven victims entrusted the care and education of their daughters to GW. GW betrayed that trust.

7.     GW, undoubtedly a premier national university, applauds itself on its website: "GW responds to the growing needs of our own community and society at large through our commitment to finding solutions to national and global problems."  The problem GW needs to solve here is not global, it is in its own backyard; it involves its employees, sexual violence,

Klaproth Law
406 5ᵀᴴ Street NW
Suite 350
Washington, D.C. 20001
—————
klaprothlaw.com

stalking, and a hostile work environment, and violations of federal law. It is legally and morally indefensible.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this claim pursuant to D.C. Code § 11-921(a)(6).

9.      This Court has personal jurisdiction over the Defendants pursuant to D.C. Code § 13-423(a)(1)-(4).

10.     Venue is proper in this Court as the acts and/or omissions alleged in this Complaint occurred in the District of Columbia.  Moreover, the Defendants are found in, reside, or transact business in the District of Columbia.  Venue is also proper as Plaintiffs' claims involve one or more common questions of fact that arise from Defendants' conduct occurring in the Washington, D.C. metropolitan area.

## PARTIES AND RELEVANT PERSONS

11.     Plaintiff Jane Doe 1 is an individual residing in the District of Columbia. Ms. Jane Doe 1 is an employee as defined by D.C. Code § 2–1401.02(9).

12.     Plaintiff Jane Doe 2 is an individual residing in the District of Columbia. Ms. Jane Doe 2 is an employee as defined by D.C. Code § 2–1401.02(9).

13.     Plaintiff Jane Doe 3 is an individual residing in the District of Columbia. Jane Doe 3 is an employee as defined by D.C. Code § 2–1401.02(9).

14.     Plaintiff Jane Doe 4 is an individual residing in the District of Columbia. Jane Doe 4 is an employee as defined by D.C. Code § 2–1401.02(9).

15.     Plaintiff Jane Doe 5 is an individual residing in the District of Columbia. Ms. Jane Doe 5 is an employee as defined by D.C. Code § 2–1401.02(9).

Klaproth Law
406 5TH Street NW
Suite 350
Washington, D.C. 20001
—————
klaprothlaw.com

16.     Defendant George Washington University is an educational institution with its principal place of business located in the District of Columbia. Defendant GW conducts substantial business activities in the District of Columbia. Defendant GW is an employer defined by D.C. Code § 2–1401.02(10).  GW is an educational institution that receives Federal financial assistance within the scope of 20 U.S.C. § 1681(a) ("Title IX").  At all times relevant, Defendant GW acted by and through its agents, servants, and/or employees within the course and scope of their employment with GW and in furtherance of GW's business.

17.     IIEP is an institute located within the Elliott School of International Affair, which is part of the George Washington University.

18.     Defendant Kyle Renner is an individual employed by GW in the District of Columbia. At all times relevant herein, Defendant Renner was the General Operations Manager and the supervisor for Plaintiffs.  At all times relevant herein, Defendant Renner was acting within the scope of his employment in a supervisory position with GW.

19.     Emerson Jones is an individual employed by GW in the District of Columbia. At all times relevant, Jones was in a supervisory role at the IIEP.  Jones is approximately 24 years old—much older than the younger female Plaintiffs he preyed upon.

20.     Defendants in this matter are jointly and severally liable to Plaintiffs for the harms and losses sustained by Plaintiffs.

### FACTS COMMON TO ALL COUNTS

21.     At all times relevant, each Plaintiff worked for GW within the IIEP as part of the Federal Work Study Program.  As a participating institution in the Federal Work Study Program, GW applied for funding from the U.S. Department of Education to employ students, such as the Plaintiffs, at the University in part-time employment.  In order to obtain a Federal Work Study

Klaproth Law
406 5TH Street NW
Suite 350
Washington, D.C. 20001
─────
klaprothlaw.com

job at GW, the Plaintiffs were required to complete the standard employment forms, including

USCIS Form I-9 and IRS Form W-4.  GW paid the Plaintiffs their wages via direct deposit for

the work they performed for GW.  GW withheld state and federal taxes from the paychecks it

issued to Plaintiffs.

22.    At all times relevant, the IIEP workplace consisted of an open-floor plan with

numerous workstations. The staff sat in close proximity to one another in open workstations.

23.    Plaintiffs were excellent employees that excelled in their positions at the IIEP.

**The Hostile Work Environment for Jane Doe 2**

24.    Ms. Jane Doe 2 is currently a Sophomore at GW. Ms. Jane Doe 2 began working

for GW at the IIEP in January 2017.  She was hired as the Digital Communication and Social

Media Assistant.

25.    Jones began his predation of Ms. Jane Doe 2 within months of her working at

IIEP. She was only a Freshman at GW at the time.

26.    In May 2017, Jones asked Ms. Jane Doe 2 to come over to his apartment.  Ms.

Jane Doe 2 agreed but explicitly told Jones numerous times that she did not want to do anything

sexual with him. Once there, Jones ignored Ms. Jane Doe 2's objections and sexually assaulted

her.  Ms. Jane Doe 2 tried to push Jones off of her, but he was much larger and stronger than

her.  She told him to stop multiple times, but Jones would not.  Jones raped Ms. Jane Doe 2.

27.    Unable to deal with the trauma that she just endured, she returned home to Utah

for the summer and tried to recover from the assault.

28.    That entire summer, Ms. Jane Doe 2 was tormented by the rape and her return to

GW.  She dreaded returning to work at IIEP in the fall, but she needed the money and the

position with IIEP was highly coveted by students looking to build their resumes. She feared

Klaproth Law
406 5ᵀᴴ Street NW
Suite 350
Washington, D.C. 20001
———
klaprothlaw.com

reporting the rape because she was worried that Jones would retaliate. And, what if people did not believe her? She felt trapped and alone.

29.     When Ms. Jane Doe 2 returned to work at IIEP in the fall of 2017, she was distraught to learn that Jones was still working at IIEP. She told herself that she could get through this if she avoided Emerson and was never left alone with him.

30.     She feared going to work every day since she was required to work in close proximity to the man that had sexually assaulted her. Because of her fear of Jones, Ms. Jane Doe 2 asked her friend and supervisor, Jane Doe 3, to walk her to work on several occassions.

31.     Jones continued to torment Ms. Jane Doe 2 and the other women employees throughout the fall of 2017. In one instance, Jones told Ms. Jane Doe 2, "I am never sticking my dick into the pool of IIEP ever again."

32.     Jones also began his sexual rating system of the women he raped. Jones publicly announced to the IIEP staff members his sexual rating of the female coworkers from best to worse. He described one of the women he raped as "a dead fish because she was so drunk."

33.     On another occasion, Jones told Ms. Jane Doe 2's faculty supervisors and her coworkers that "yeah, we fucked" (referring to him and Ms. Jane Doe 2); a coworker informed Ms. Jane Doe 2 that Jones had been "degrading" Ms. Jane Doe 2.

34.     Jones would frequently brag in the workplace about his sexual exploitation of the women in the workplace. He bragged about the number of partners (e.g. victims) he had. And he would publicly torment and degrade his victims. These women were not only sexually assaulted by this monster, they were mentally assaulted by his taunts, threats, and ridicule.

35.     On March 26, 2018, Ms. Jane Doe 2 was constructively discharged by GW.

Klaproth Law
406 5TH Street NW
Suite 350
Washington, D.C. 20001
⎯⎯⎯⎯
klaprothlaw.com

**The Hostile Work Environment for Jane Doe 4**

36.     Ms. Jane Doe 4 is currently a sophomore at GW. She began working for GW at the IIEP in October 2016. She was hired as a Team Member on the Events and Operations Team.

37.     As a Team Member on the Events and Operations Team, Ms. Jane Doe 4 was responsible for planning IIEP events and ensuring that the events ran smoothly.

38.     Ms. Jane Doe 4, like the other Plaintiffs, was forced to work closely with Jones thereby subjecting her to a sexually hostile workplace.  Initially, Jones' harassment consisted of demeaning tactics such as intentionally calling the female employees by the wrong names to diminish and insult them.  But it grew worse as time went on.

39.     On one occasion, Ms. Jane Doe 4 heard Jones say to numerous coworkers that he "would never dip his dick in the IIEP pool again."

40.     On another occasion, a female coworker finally stood up to Jones on behalf of the women in the office to address his misogynistic conduct.  Jones shouted down the female coworker by stating, "you will have to get used to things like that if you ever want to be successful in a work environment." In fact, this was Jones' constant refrain anytime a female worker confronted his sexist behavior. The female coworker left the office crying.

41.     Jones referred to new female staff members as his "new office crush."  To Jones, the younger female staff members were nothing but conquests, which he made clear in the workplace. Unfortunately, Ms. Jane Doe 4 is one of the female workers in the IIEP that Jones targeted.

42.     On September 30, 2017, Ms. Jane Doe 4 was out at a nightclub with her IIEP coworkers.  At that nightclub, Jones bought the underage IIEP staff, including Ms. Jane Doe 4,

Klaproth Law
406 5ᵀᴴ Street NW
Suite 350
Washington, D.C. 20001
—————
klaprothlaw.com

an excessive number of alcoholic drinks. Eventually, Jones got Jane Doe 4 exceedingly

intoxicated at the club. After taking the IIEP workers back to GW's campus drunk, Jones asked

Ms. Jane Doe 4 to come his apartment. Ms. Jane Doe 4 did not want to go, but Jones was older

than her and her boss at IIEP, so she felt she had no choice. At Jones' apartment, Ms. Jane Doe

4 slipped in and out of consciousness, as she was still grossly intoxicated. While in that

inebriated and unresponsive state, Jones took off her clothes, climbed on top of her and raped

Ms. Jane Doe 4. Ms. Jane Doe 4 said "no" and tried to fight him off, but she did not have the

strength. She continued to fight him and was able to stop the assault before falling asleep. The

next morning she awoke to Jones, again, attempting to rape her.  She pushed Jones off of her

and fled.

43.     For Ms. Jane Doe 4, Jones' assault did not end on that terrible, tragic night. After

raping Ms. Jane Doe 4, Jones bragged in the workplace about his encounter to Ms. Jane Doe 4'

coworkers. He made humiliating, derogatory sexual comments about Ms. Jane Doe 4 to her

coworkers and the faculty members working in the IIEP. And adding insult to injury, Jones

publicly ranked Ms. Jane Doe 4 among the other females in the office that he had victimized.

**The Hostile Work Environment for Jane Doe 1**

44.     Ms. Jane Doe 1 is currently a Junior at GW. She began working for GW at the

IIEP in September 2017. She was hired as the Events and Operations Assistant.

45.     As the Events and Operations Assistant, Ms. Jane Doe 1 was responsible for

organizing travel arrangements for event attendees, staffing events, preparing rooms and

meeting spaces, creating event menus and ordering catering, and booking event spaces for IIEP

events.

Klaproth Law
406 5ᵀᴴ Street NW
Suite 350
Washington, D.C. 20001
—————
klaprothlaw.com

46.    Shortly after beginning her employment at IIEP, Ms. Jane Doe 1's supervisor, Emerson Jones, began making inappropriate advances towards her. It started on October 1, 2017, when Jones texted Ms. Jane Doe 1 at 2:18 a.m. "oh my god you're so hot."

47.    On October 6, 2017, Jones invited Ms. Jane Doe 1 over to his house. She declined and said that she would like to maintain a professional relationship. Nonetheless, Jones persisted and said "maybe we could go out another time."

48.    On October 26, 2017, Ms. Jane Doe 1 learned that Jones had threatened to kill her female coworker.

49.    On November 9, 2017, Ms. Jane Doe 1 received a text message from a female coworker asking if Jones had left the office. Jones had followed the coworker into the elevator so she hid in the stairwell until he left the office.

50.    On December 7, 2017, Ms. Jane Doe 1 told Jones while in the office that she was stressed about her upcoming performance that she was performing in. Jones asked if he could attend the performance. Ms. Jane Doe 1 told him no.

51.    On December 9, 2017, Ms. Jane Doe 1 received a text message from Jones containing a picture of her during her performance. Apparently, Jones had attended the performance over Ms. Jane Doe 1's protestations that he not.

52.    On December 10, 2017, Jones again asked Ms. Jane Doe 1 on a date. She again said no.

53.    Feeling unsafe about Jones' persistent pursuit, Ms. Jane Doe 1 confided in a coworker about Jones' aggressive behavior. At that time, Ms. Jane Doe 1 learned that Jones has raped one of her coworkers.

54.     On December 18, 2017, Ms. Jane Doe 1 wrote to Renner, "I need to sit down with you about an urgent issue regarding our workplace dynamic…."

55.     On December 19, 2017, Ms. Jane Doe 1 filed a complaint with her supervisor Kyle Renner. During this meeting, Ms. Jane Doe 1 told Renner that she feels unsafe working with Jones. She described Jones behavior toward her, and also stated that one of her female coworkers had been raped. ***Renner responded, "sometimes you need to work with people that you don't necessarily get along with."*** Renner largely ignored the complaint, leaving Jones in the workplace and Ms. Jane Doe 1 feeling vulnerable and helpless.

56.     Any properly trained manager (or any moral human being for that matter) would have heard Ms. Jane Doe 1's complaint and did everything in his or her power to protect the women working under and around Jones. Renner did nothing. Renner was part of the problem and his behavior is indicative of the systematic failures of GW to recognize and respond to complaints of sexual harassment in the workplace.

57.     More egregious, Renner actually tried to cover up Jones' misconduct. Jones and Renner were close friends that were known to go drinking together after work. On multiple occasions, Renner would touch the small of Ms. Jane Doe 1's back while in the workplace. It was also generally known throughout the workplace that Renner had a sexual relationship with one of the female employees. Renner also made derogatory comments about women in the workplace, such as disparaging "women's studies."

58.     On December 21, 2017, Ms. Jane Doe 1 received an email from a Title IX investigator. But the Title IX investigator took no action beyond that email. This was a direct violation of GW's obligation to perform independent investigations of sexual assault and misconduct regarding students.

Klaproth Law
406 5TH Street NW
Suite 350
Washington, D.C. 20001
–––––
klaprothlaw.com

59.     On January 30, 2017, Jones openly discussed his sexual exploits in the workplace.

60.     On February 1, 2017, Ms. Jane Doe 1 observed Jones in Renner's office discussing something with Renner. Just before the meeting, Jones had been treating Ms. Jane Doe 1 with hostility and harassed her as she quietly did her work. Jones also disparaged Ms. Jane Doe 1 to her supervisor. As a result, Ms. Jane Doe 1's supervisor told her that she was not allowed to work the event that evening even though the event was understaffed. This was all in retaliation for Ms. Jane Doe 1's complaint to Renner.

61.     On February 7, 2017, Ms. Jane Doe 1 requested that she be demoted to Event staff so that she would not have to interact with Jones anymore.

62.     On April 2, 2017, Ms. Jane Doe 1 was constructively discharged. She was forced to resign out of her fear of interacting with Jones in the IIEP office.

**The Hostile Work Environment for Jane Doe 3**

63.     Ms. Jane Doe 3 is currently a Sophomore at GW. She began working for GW at the IIEP in September 2016. She is employed as the Digital Communications and Social Media Team Lead.

64.     As the Digital Communications and Social Media Team Lead, Ms. Jane Doe 3 is responsible for managing and supervising the Digital Communications Social Media Team. Ms. Jane Doe 3 interacts with Renner as part of her job on a daily basis.

65.     As part of her job, Ms. Jane Doe 3 has had to endure sexually hostile conduct from Renner. When walking next to Ms. Jane Doe 3, Renner would touch Ms. Jane Doe 3's arm or shoulder. While working at her computer, Renner has frequently reached over Ms. Jane Doe 3 to type on her keyboard while she remains seated. Renner also routinely commented on Ms.

Klaproth Law
406 5ᵀᴴ Street NW
Suite 350
Washington, D.C. 20001
─────
klaprothlaw.com

Jane Doe 3's clothing in the office. Renner has never exhibited this behavior to the male employees.

66.     It is also common knowledge in the office that Renner had slept with a female student who had worked in the IIEP. Renner also asked another female student employee out for a coffee after she left the IIEP.

67.     On February 17, 2017, during Ms. Jane Doe 3's professional development meeting, Renner asked Ms. Jane Doe 3 when she intended to get married and have kids. Ms. Jane Doe 3 later learned that he asked several female employees this question during their professional development meetings.

68.     In her position of Digital Communications and Social Media Team Lead, Ms. Jane Doe 3 learned that Jones assaulted three girls in the office.  Numerous female workers in the IIEP requested that Ms. Jane Doe 3 and/or Renner to schedule different shifts for them so as to avoid interacting with Jones in the IIEP office.  Female staff members complained to Ms. Jane Doe 3 about Jones' sexual misconduct and inappropriate conduct in the office. In one such complaint, a female employee complained that Jones had been asking underage female workers to "get drunk" with him after work. Moreover, Ms. Jane Doe 3 received two written complaints in a suggestion box about Jones' sexually hostile behavior.

69.     Ms. Jane Doe 3 also received complaints that Jones had been discussing his sexual encounter with Ms. Jane Doe 2 loudly in the IIEP office. One staff member stated that Jones' had bragged to the staff members that Ms. Jane Doe 2 had "cheated on her boyfriend" with him.

70.     Jones' sexual harassment and assault of the female staff members in the IIEP office has impacted Ms. Jane Doe 3's ability to perform her job. She has filed as least *four*

Klaproth Law
406 5ᵀᴴ Street NW
Suite 350
Washington, D.C. 20001
—————
klaprothlaw.com

formal complaints with her supervisors about Jones' sexual harassment and assaults. Renner and

GW have largely ignored those complaints or taken no discernible action to remove Jones from

the workplace, begin a timely Title IX investigation, and/or report Jones to the police. As a

result, Ms. Jane Doe 3 has not been able to function as the team lead. Ms. Jane Doe 3 works

within feet of her female coworkers that were raped by Jones and there is nothing she can do to

protect them because GW has ignored her complaints. *GW has not, and will not, terminate*

*Jones*.

71.     Ms. Jane Doe 3 knows that her coworkers are fearful to come to work and to

interact with Jones. She attempts to rearrange the female staff members work schedules so they

do not have to interact with Jones, but there are only so many work shifts that she can shuffle.

How can Ms. Jane Doe 3 ask her female coworker, whom she knows has suffered severe and

significant trauma, come into work the next day where she will see their rapist?

72.     Ms. Jane Doe 3 has begun to fear for her safety since she has been an advocate

for the other female workers. This has resulted in Ms. Jane Doe 3 avoiding the office as much as

possible and to cut back significantly on her hours.

**The Hostile Work Environment for Jane Doe 5**

73.     Ms. Jane Doe 5 is currently a sophomore at GW. She began working for GW at

the IIEP in January 2017. She was hired as a Team Member on the Events and Operations

Team.

74.     As a Team Member on the Events and Operations Team, Ms. Jane Doe 5 was

responsible for planning IIEP events and ensuring that the events ran smoothly.

75.     Jones began working at the IIEP shortly after Ms. Jane Doe 5 started her

employment at the IIEP. The IIEP workplace immediately transformed into a hostile

Klaproth Law
406 5TH Street NW
Suite 350
Washington, D.C. 20001
—————
klaprothlaw.com

environment.  The female workers, including Ms. Jane Doe 5, felt extremely uncomfortable around Jones due to his aggressive behavior and misogynistic comments.

76.     In one instance, Ms. Jane Doe 5 observed Jones shout down a female coworker after the female coworker requested that Jones stop verbally harassing her in the workplace. Jones became extremely aggressive, belittled her, and told the female coworker that she needed to stop being "emotional" get "used to this type of behavior in a work environment."

77.     Ms. Jane Doe 5 has heard Jones talk to other coworkers in the workplace about women in a sexually demeaning way, and has heard Jones brag about his sexual experiences.

78.     To the female employees, such as Ms. Jane Doe 5, Jones would intentionally call them the incorrect names claiming that all the women in the office are the same.

79.     Jones' predatory pursuit of Ms. Jane Doe 5 began almost immediately after Jones started at the IIEP.

80.     In April 2017, Ms. Jane Doe 5 attended a party in a GW dorm room that was hosted by her IIEP coworker. At the party, Ms. Jane Doe 5 consumed an excessive amount of tequila shots that left her grossly intoxicated. She had announced to the people at the party how drunk she was, but she felt comfortable since she was with her friends. But there lurking in the background of the freshman party, was the 24-year-old Jones. While at the party, Jones repeatedly asked Ms. Jane Doe 5 to leave with him to his house. Ms. Jane Doe 5 repeatedly said no. As the party ended, Jones called an Uber and pressured Ms. Jane Doe 5 to leave with him. During the Uber ride, Jones began his assault in the car.  Once at Jones' house, Ms. Jane Doe 5 "blacked out" and lost consciousness. She then came in and out of consciousness as Jones aggressively raped her. Ms. Jane Doe 5 told Jones to stop and that it hurt, but she was too intoxicated to physically stop the assault.

Klaproth Law
406 5ᵀᴴ Street NW
Suite 350
Washington, D.C. 20001
—————
klaprothlaw.com

- 15 -

81.     IIEP staff members have complained about Jones to Renner since March 2017, but Renner ignored those complaints and silenced the female complainants.

**GW's Indifference to the Complaints of Rape and Harassment**

82.     GW acknowledges that:

> Sexual harassment is destructive of such a climate and will not be tolerated in the University community. Sexual harassment creates unacceptable stress for the entire workforce, adversely affects morale, demeans the harassed individual, and could expose the University and the harasser to significant liability.[1]

As such, GW claims, "[t]he George Washington University does not unlawfully discriminate against any person on any basis prohibited by federal law, the District of Columbia Human Rights Act...all allegations of discrimination, harassment, or complaints of unequal treatment are taken seriously." Such a proclaimed policy is aspirational in form,[2] but devoid of any substance. In this case, not only has GW demonstrated a deliberate indifference to Plaintiffs' complaints of harassment, it has provided safe harbor for the assailant.

83.     GW has had actual and constructive knowledge of the sexually hostile work environment since September 2017 when the harassment began. Jones made the sexually explicit comments in a small, shared, common workspace in front of supervisor and faculty members. The lack of inaction by GW demonstrates that atmosphere of systemic tolerance of sexual hostility by managers and supervisors existed in the IIEP.

---

[1]     https://facultyaffairs.gwu.edu/important-personnel-policies-0 (last accessed on April 9, 2018).

[2]     Remarkably, GW's *Student Employee Manual for Students that Work at GW* contains a dead hyperlink to the section on sexual harassment. *See Student Employee Manual for Students that Work at GW* at 15 (available at https://careerservices.gwu.edu/sites/g/files/zaxdzs2271/f/SE%20Student%20Manual_Revised%20%20August%20%202017.pdf ) (the "Sexual Harassment" section hyperlinks to this inactive site https://www.gwu.edu/hr/handbook/3.html#3.3 ).

Klaproth Law
406 5ᵀᴴ Street NW
Suite 350
Washington, D.C. 20001
─────
klaprothlaw.com

84. Moreover, as early as December 19, 2017, Ms. Jane Doe 1 filed a complaint with her supervisor, Renner.  During this meeting, Ms. Jane Doe 1 told Renner that she felt unsafe working with Jones and that Jones had raped one of her coworkers. Renner responded, "sometimes you need to work with people that you don't necessarily get along with." GW took no action in response to Ms. Jane Doe 1's complaint.

85. GW did nothing.

86. On February 2, 2018, Ms. Jane Doe 3 and Ms. Jane Doe 2 met with Renner. During this meeting, Ms. Jane Doe 2 told Renner, her supervisor, that Jones had raped her. Ms. Jane Doe 2 further told Renner that Jones raped two other girls in the IIEP office. During this meeting, Ms. Jane Doe 2 also gave Renner a written statement that detailed Jones' sexually hostile conduct and misogynistic comments in the workplace.  Renner stated that he would talk to the Title IX office to see what he should do. Renner also recommended that Ms. Jane Doe 2 work from home.

87. GW still did nothing.

88. On February 9, 2018, Ms. Jane Doe 1 met with the Assistant Director for Sexual Assault Prevention and Response Office for Diversity, Equity, and Community Engagement ("ODECE").  Ms. Jane Doe 1 complained about Jones' sexual harassment and sexual assault of Ms. Jane Doe 5.  ODECE stated that it would inquire to the General Counsel's Office whether the complaint would be treated as "student-on-student harassment" or "staff-on-staff harassment."

89. On February 11, 2018, Ms. Jane Doe 2 observed Jones in the office so she emailed Renner, "I was wondering if we could have a follow-up meeting. Let me know if you are free soon?"   Renner never responded.

Klaproth Law
406 5TH Street NW
Suite 350
Washington, D.C. 20001
––––––
klaprothlaw.com

90.     On February 23, 2018, Ms. Jane Doe 2 had her "professional development meeting" with Renner. While she waited for her meeting, she was forced to sit next to Jones in the cubicles. The meeting lasted approximately 45 minutes to one hour, which consisted mostly of work-related matters. At the end of the meeting, Renner told Ms. Jane Doe 2 that to "follow-up" on her complaint about Jones, there was nothing Renner could do because his "hands were tied." Ms. Jane Doe 2 asked Renner to fire Jones.  Renner repeatedly stated that his "hands were tied."  Renner stated that Ms. Jane Doe 2 had to file an "official complaint with the Title IX office."  Ms. Jane Doe 2 complained that this was unacceptable, because Jones was still had access to the girls in the office and that he could hurt them next.  Ms. Jane Doe 2 complained that it was unacceptable that not only she had to work beside the man that raped her, but that GW would even allow a known rapist into the office. Renner concluded the meeting by stating that Ms. Jane Doe 2 should work from home and go to therapy. At this time, Ms. Jane Doe 2 had also complained to the Title IX about Jones' harassment and assault.

91.     GW still did nothing.

92.     On February 28, 2018, Ms. Jane Doe 3 met with Renner. She told Renner during this meeting that she believed Jane 2 would be quitting IIEP because Kyle would not take action in response to her complaint.  Renner again claimed that his "hands were tied" and it was "a difficult situation."

93.     GW took no action.

94.     On March 6, 2018, Ms. Jane Doe 1 learned that her previous complaint to ODECE would be treated as a "student-on-student harassment" rather than "staff-on-staff harassment" even though the harassment was occurring in the IIEP workplace.

Klaproth Law
406 5TH Street NW
Suite 350
Washington, D.C. 20001
—————
klaprothlaw.com

95.    On March 7, 2018, Ms. Jane Doe 2 wrote to Renner that four female employees "and I want to discuss how we feel unsafe in the office.  As far as I am aware, other females in the office are also going to be sending me statements that they want to be read as they couldn't make it to the meeting."

96.    On March 9, 2018, Plaintiffs met with Renner. During this meeting, each of the Plaintiffs detailed the sexual harassment they were exposed to in the workplace, Jones' sexual assaults on female staff members, Jones' demeaning treatment of the female staff members, and Jones' threat to kill a female staff member. The Plaintiffs also read written statements prepared by two other girls. The Plaintiffs told Renner that at least 11 female staff members had been impacted by Jones' hostile conduct. The Plaintiffs told Renner that they felt unsafe working with Jones. The Plaintiffs demanded an answer as to why GW had done nothing in response to their complaints. Renner stated that he needed to utilize the "correct mechanisms" to terminate Jones.  The Plaintiffs pressed Renner what those "mechanisms" were. He had no answer. Renner further stated that he did not want to ask Jones to work from home. He instead asked the Plaintiffs to work from home.

97.    Still, GW did nothing.

98.    On March 26, 2018, Ms. Jane Doe 2 resigned from IIEP. She wrote to Renner:

[W]orking in the recent months at IIEP has been a terrible experience for me. So it saddens me to notify you of my immediate resignation from the communications teams.

The institute's either inability or unwillingness to protect myself and my peers from a clear and imminent threat has been disheartening to say the least. To know that Emerson is still not formally fired and that 11 girls complaining is not enough for IIEP and GWU to ensure his dismissal is, frankly, grossly astounding.

Klaproth Law
406 5TH Street NW
Suite 350
Washington, D.C. 20001
——————
klaprothlaw.com

> I hope the situation is eventually resolved, but after putting forth so
> many months of fighting for my safety and seeing little to nothing
> happening, I am no longer willing to work under the Institute.

99.     On March 27, 2018, Ms. Jane Doe 2 received a telephone call from the Director

of IIEP, Maggie Chen. Director Chen said she was outraged by what happened and wanted

Jones to be fired ASAP. Director Chen said she asked Renner what he did to fire Jones, and

Renner said "nothing." Director Chen said she went to HR to have Jones fired and the HR

department replied, "this is not a HR issue, it is a Title IX issue." Director Chen then

complained to GW's Title IX Office which stated "we would need formal complaints from each

of the victims," and that it could not take any action until after the judiciary council completed

its investigation. Director Chen stated that she then complained to GW's Office of the General

Counsel, which reiterated that the complaints would need to be processed by the Title IX Office.

When Director Chen proclaimed that she had "cause to terminate him," the General Counsel's

Office said "that's not fair to Jones." Director Chen stated, "I was told that until [Jones] has his

due process, there is nothing I can do….I am so frustrated by this system…it is not good."

During this call, Director Chen further stated that there is "absolutely no training" on sexual

harassment. Director Chen ended the call by stating that "I was told all 11 girls must come file

formal complaints, otherwise GW won't do anything. I am prohibited from terminating….[but]

I won't renew his contract at the end of the year."

100.    GW's response—nothing.

101.    On March 30, 2018, Ms. Jane Doe 3 encountered Renner on GW's campus.

Renner pressed to know why Ms. Jane Doe 2 would not return Renner's calls. Ms. Jane Doe 3

replied that Ms. Jane Doe 2 "is not comfortable speaking with you." Renner then stated that he

was "very concerned that [the Plaintiffs'] group chat with the eleven [victims] was spreading

Klaproth Law
406 5ᵀᴴ Street NW
Suite 350
Washington, D.C. 20001
———
klaprothlaw.com

misinformation and that [the Plaintiffs] were making the situation worse." In doing so, Renner

attempted to discourage Ms. Jane Doe 3 and the Plaintiffs from pursuing their complaints of

harassment.

102.    On April 2, 2018, Ms. Jane Doe 2 met with Jen Alexander-Smith of the Office of

Student Rights & Responsibilities at GW ("Student Rights Office"). The Students Rights Office

stated that it had learned of Plaintiffs' complaints on March 31, 2018, although their Complaints

had been made months earlier. The Student Rights Office stated it is prohibited from becoming

involved in work place problems. The Student Rights Office stated, ***"we have no policies in***

***place regarding student problems in the workplace....there is absolutely no policy for***

***harassment of students in the workplace."*** Ms. Jane Doe 2 proclaimed that "this is an unsafe

work environment, and something needs to be done." The Student Rights Office said, "this is a

gray area, we have no policy in place for this...we cannot write policy for every possible

complaint that we could come across." The Student Rights Office further admitted that it never

received any complaint from Title IX or Renner about Jones' misconduct. The Student Rights

Office further stated that according to Title IX, it had not yet started an investigation because it

had not received a "formal" complaint.

103.    To date, Jones is still employed by GW in the IIEP workplace.

**COUNT I**
**HOSTILE WORK ENVIRONMENT IN VIOLATION**
**OF THE D.C. HUMAN RIGHTS ACT**
**(All Defendants)**

104.    Plaintiff realleges and incorporates by reference the allegations contained in the

preceding paragraphs of this Complaint as if fully set forth herein.

105.    During Plaintiffs' employment, a severe and pervasive hostile environment

Klaproth Law
406 5TH Street NW
Suite 350
Washington, D.C. 20001
_____
klaprothlaw.com

existed in violation of the D.C. Human Rights Act. Renner and Jones made sexually charged comments and touched Plaintiffs' inappropriately thereby creating a sexually hostile environment. Further, Jones' sexual assault of Ms. Jane Doe 4, Ms. Jane Doe 5 and Ms. Jane Doe 2 created a sexually hostile work environment. Renner's and Jones' sexual hostility towards Plaintiffs was pervasive and regular. Plaintiffs dealt with their sexually charged comments and hostile behavior on a daily basis. Indeed, Jones' sexual animus towards the female employees in the IIEP was a pattern and practice of discriminatory conduct that pervaded the workplace at GW and subjected all employees to a hostile environment.

106. Defendants GW and Renner fostered, accepted, ratified, and/or otherwise failed to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiffs because of their gender. *Respondeat superior* liability further exists because Renner and Jones were Plaintiffs' supervisors or managers, and therefore an agent of GW.

107. As a direct and proximate result of Defendants' violation of the D.C. Human Rights Act, Plaintiffs have suffered economic and non-economic damages set forth herein and has incurred attorneys' fees and costs. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless, and until, the Court grants the relief requested herein.

108. Defendants' violations of the D.C. Human Rights Act were willful and warrant the imposition of punitive damages.

109. Plaintiffs seek affirmative relief which may include, but is not limited to, requiring Defendants to post the avenues to address complaints of workplace harassment, discrimination, and retaliation; requiring Defendant's employees to undergo discrimination,

sexual harassment and retaliation training; terminating Emerson Jones; and any other equitable

relief as the Court deems appropriate, compensatory damages, attorneys' fees, costs and

disbursements of this action.

110.    WHEREFORE, Plaintiffs pray for relief in the form of a judgment against

Defendants, jointly and severally, by awarding (1) compensatory damages; (2) punitive

damages; (3) equitable relief, including back pay and front pay; (4) costs and attorney's fees; (5)

punitive damages; and (6) any other relief the Court deems proper.

**COUNT II**
**RETALIATION IN VIOLATION OF THE D.C. HUMAN RIGHTS ACT**
**(All Defendants)**

111.    Plaintiffs reallege and incorporate by reference the allegations contained in the

preceding paragraphs of this Complaint as if fully set forth herein.

112.    Defendants retaliated against Plaintiffs by forcing them to work from home,

disciplining them, reducing their hours, and terminating them from their employment with GW.

113.    The harassing, reckless, wrongful, willful and malicious treatment of the

Plaintiffs, by the Defendants solely because Plaintiffs made complaints of sexual harassment

and objected to discriminatory conduct and/or participated in a claim of discrimination, or

witnessed to discrimination; constitutes denial of equal opportunity, terms, conditions, and

perquisites of employment and is retaliation with the meaning of the D.C. Human Rights Act.

114.    Plaintiffs engaged in statutorily protected activity when they exercised their

rights under the D.C. Human Rights Act by complaining of Jones' sexual harassment to their

supervisor, Renner.

115.    GW took no remedial measures in response to Plaintiffs' complaints.  Instead the

hostile environment continued and grew worse as more unsuspecting women were preyed upon

Klaproth Law
406 5TH Street NW
Suite 350
Washington, D.C. 20001
—————
klaprothlaw.com

by Jones.

116.     Instead of taking remedial measures against the sexual harassment by Jones, Defendants instead retaliated against the Plaintiffs. Jones, the sexual deviant and sociopath, is still employed by GW.  While on the other hand, Ms. Jane Doe 2 and Ms. Jane Doe 1 are not.

117.     As a result of Defendants' harassing, reckless, unlawful, wanton and malicious retaliatory conduct, Plaintiffs have suffered economic and non-economic damages set forth herein and has incurred attorneys' fees and costs.  Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

118.     Defendants' retaliation in violation of the D.C. Human Rights Act was willful and warrant the imposition of punitive damages.

119.     Plaintiffs seek affirmative relief which may include, but is not limited to, requiring Defendants to post the avenues to address complaints of workplace harassment, discrimination, and retaliation; requiring Defendant's employees to undergo discrimination, sexual harassment and retaliation training; terminating Emerson Jones; and any other equitable relief as the Court deems appropriate, compensatory damages, attorneys' fees, costs and disbursements of this action.

120.     WHEREFORE, Plaintiffs pray for relief in the form of a judgment against Defendants, jointly and severally, by awarding (1) compensatory damages; (2) punitive damages; (3) equitable relief, including back pay and front pay; (4) costs and attorney's fees; (5) punitive damages; and (6) any other relief the Court deems proper.

Klaproth Law
406 5TH Street NW
Suite 350
Washington, D.C. 20001
———
klaprothlaw.com

## COUNT III
## NEGLIGENT TRAINING, SUPERVISION, AND RETENTION
### (GW only)

121.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

122.    GW had a duty to train its employees and to supervise its employees.  GW breached its duty to exercise reasonable care by acting negligently and recklessly in the following specific respects and without limitation:

a.    Failing to provide formal training on sexual harassment in the workplace;

b.    Failing to supervise Renner and Jones in the IIEP office;

c.    Failing to adopt policies to receive and process complaints of sexual harassment in the IIEP office;

d.    Failing to adopt policies to prevent sexual harassment in the IIEP office;

e.    Failing to discipline employees for sexual harassment;

f.    Failing to discipline Renner and Jones in connection with the sexual harassment in the IIEP office; and,

g.    Failing to investigate complaints of sexual harassment in the IIEP office.

123.    It was foreseeable to the GW that the failure to train its employees, including Renner and Jones, would result in the sexual harassment in the IIEP office and cause harm to its employees, such as the Plaintiffs.  As a direct and proximate result of the GW's failure to exercise reasonable care, Plaintiffs have suffered and will continue to suffer much physical pain and mental anguish; have incurred medical expenses and will continue to incur medical expenses; and have suffered and will continue to suffer mental and physical pain, and emotional distress.

124.    WHEREFORE, Plaintiffs pray for relief in the form of a judgment awarding

Klaproth Law
406 5TH Street NW
Suite 350
Washington, D.C. 20001
——————
klaprothlaw.com

compensatory damages, punitive damages, and any other relief the Court deems proper

**COUNT IV**
**VIOLATION OF TITLE IX**
**(20 U.S.C. § 1681,** *et seq.***)**
**(GW's Deliberate Indifference to Sexual Harassment)**

125.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

126.   The sex-based harassment endured by Plaintiffs was so severe, pervasive, and objectively offensive that it deprived Plaintiffs of access to educational opportunities or benefits provided by GW.

127.   GW created and/or subjected Plaintiffs to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because

    a.   Plaintiffs are members of a protected class;

    b.   Plaintiffs were subjected to sexual harassment in the form of a sexual assault and/or harassment by another student;

    c.   Plaintiffs were subjected to harassment based on their sex; and

    d.   Plaintiffs were subjected to a hostile educational environment created by GW's lack of policies and procedures and failure to properly investigate and/or address the sexual assault and subsequent harassment.

128.    GW and its officials had actual knowledge of sexual assaults and harassment committed by Jones, and the resulting harassment of Plaintiffs created by GW's failure to investigate and discipline Jones in a timely manner and consistent with its own policy and federal and state law.

129.   GW's failure to promptly and appropriately respond to the alleged sexual harassment, resulted in Plaintiffs, on the basis of their sex, being excluded from participation in,

Klaproth Law
406 5ᵀᴴ Street NW
Suite 350
Washington, D.C. 20001
―――――
klaprothlaw.com

being denied the benefits of, and being subjected to discrimination in GW's education program in violation of Title IX.

130.     GW failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment and instead acted with deliberate indifference toward Plaintiffs.

131.     GW persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiffs.

132.     GW engaged in a pattern and practice of behavior designed to discourage and dissuade students and parents of students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated.

133.     This policy and/or practice constituted disparate treatment of females had a disparate impact on female students, such as Plaintiffs.

134.     Plaintiffs have suffered emotional distress and psychological damage, and their character and standing in her community have suffered from the harassment fostered as a direct and proximate result of GW's deliberate indifference to their rights under Title IX.

135.     WHEREFORE, Plaintiffs pray for relief in the form of a judgment against Defendants, jointly and severally, by awarding (1) compensatory damages; (2) punitive damages; (3) equitable relief, including back pay and front pay; (4) costs and attorney's fees; (5) punitive damages; and (6) any other relief the Court deems proper.

**COUNT IV**
**VIOLATION OF TITLE IX**
**(20 U.S.C. § 1681, *et seq.*)**
**(GW's Retaliation by Withholding Protections Conferred by Title IX)**

136.     Plaintiffs reallege and incorporate by reference the allegations contained in the

Klaproth Law
406 5ᵀᴴ Street NW
Suite 350
Washington, D.C. 20001
_____

klaprothlaw.com

preceding paragraphs of this Complaint as if fully set forth herein.

137.   Immediately after Plaintiffs notified Defendants of the sexual assaults committed by Jones, Defendants retaliated against Plaintiffs by denying them their rights under Title IX, including without limitation, the following rights:

a.   Respectful treatment throughout the process, regardless of outcome;

b.   University counseling services;

c.   Be informed about the student judicial process on an ongoing basis;

d.   Access case file within legal parameters;

e.   A no contact order with the other party throughout the process;

f.   To have an advisor of your choosing present with you during any and all phases of the investigation and hearing;

g.   A thorough, prompt, and equitable investigation and resolution of a complaint;

h.   Opportunity to submit a written statement addressing the allegations and to provide evidence and witnesses;

i.   Be informed of the university's code of conduct for students, faculty, and staff, including anticipated timelines and possible outcomes of a complaint;

j.   Request protective measures, remedies, support, and resources;

k.   Protection against retaliation from any university staff or student;

l.   A free forensic exam from a Sexual Assault Nurse Examiner;

m.   The option to notify law enforcement, independent of campus process;

n.   Receive assistance modifying academic or housing situation; and,

o.   Not to have to interact face-to-face with the respondent at any time during the process.

138.   WHEREFORE, Plaintiffs pray for relief in the form of a judgment against Defendants, jointly and severally, by awarding (1) compensatory damages; (2) punitive

Klaproth Law
406 5TH Street NW
Suite 350
Washington, D.C. 20001
——————
klaprothlaw.com

damages; (3) equitable relief, including back pay and front pay; (4) costs and attorney's fees; (5) punitive damages; and (6) any other relief the Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, each Plaintiff individually prays for relief in the form of a judgment against all Defendants, jointly and severally, for compensatory damages in the amount $5,000,000; punitive damages in the amount of $25,000,000; equitable relief; pre- and post-judgment interest; costs; attorney's fees; and any other relief the Court deems proper and just.

## JURY AND TRIAL DEMAND

Plaintiffs hereby demand a trial by jury with respect to each claim in this Complaint.

Respectfully submitted,

/s/ Brendan J. Klaproth
Brendan J. Klaproth (D.C. Bar No. 999360)
Jesse C. Klaproth (D.C. Bar No. PA0063)
Klaproth Law PLLC
406 5th Street NW
Suite 350
Washington, DC 20001
Tel: 202-618-2344
Email: Bklaproth@klaprothlaw.com
*Attorney for Plaintiffs*

Klaproth Law
406 5TH Street NW
Suite 350
Washington, D.C. 20001
⸺⸺⸺
klaprothlaw.com

# Superior Court of the District of Columbia

## CIVIL DIVISION- CIVIL ACTIONS BRANCH
### INFORMATION SHEET

Jane Doe 1, *et al*

vs

George Washington University, *et al*

Case Number: 2018 CA 003335 B

Date: 05/10/2018

☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)* Brendan J. Klaproth | Relationship to Lawsuit |
| Firm Name: Klaproth Law PLLC | ☒ Attorney for Plaintiff |
| Telephone No.: 202-618-2344   Six digit Unified Bar No.: DC Bar No. 999360 | ☐ Self (Pro Se)  ☐ Other: _____ |

TYPE OF CASE:  ☐ Non-Jury   ☒ 6 Person Jury   ☐ 12 Person Jury
Demand: $125,000,000.00     Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.: _____ Judge: _____ Calendar #: _____

Case No.: _____ Judge: _____ Calendar#: _____

---

NATURE OF SUIT:     *(Check One Box Only)*

**A. CONTRACTS**                              **COLLECTION CASES**

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☒ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
       Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
       Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
       Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
       Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
       Under $25,000 Consent Denied

**B. PROPERTY TORTS**

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

**C. PERSONAL TORTS**

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile,
       Not Malpractice)

☐ 17 Personal Injury- (Not Automobile,
       Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE        IF USED

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10  Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D.  REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

| 05/10/2018 |

_____
Date



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Jane Doe 1, *et al*
_____
                        Plaintiff

vs.                                          Case Number    2018 CA 003335 B

George Washington University
_____
                        Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Brendan J. Klaproth, Klaproth Law PLLC                    *Clerk of the Court*
_____
Name of Plaintiff's Attorney
        406 5th St. NW, Suite 350
_____                By _____
Address                                                        Deputy Clerk
        Washington, DC 20001
_____
        202-618-2344                                    Date        05/14/2018
_____
Telephone
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요        የአማርኛ ትርጉም ከፈለጉ በ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español




## TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
### DIVISIÓN CIVIL
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

Jane Doe 1, et al
_____
                                    Demandante

                    contra

                                                Número de Caso: _____

George Washington University
_____
                                    Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Brendan J. Klaproth, Klaproth Law PLLC                      _SECRETARIO DEL TRIBUNAL_
_____
Nombre del abogado del Demandante

406 5th St. NW, Suite 350
_____              Por: _____
Dirección                                                           Subsecretario
      Washington, DC 20001
_____

202-618-2344
_____              Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요         የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

Jane Doe 1, *et al*
_____
                                    Plaintiff

                    vs.                                          Case Number   2018 CA 003335 B

Kyle Renner
_____
                                    Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Brendan J. Klaproth, Klaproth Law PLLC
_____
Name of Plaintiff's Attorney

406 5th St. NW, Suite 350
_____
Address
       Washington, DC 20001
_____

       202-618-2344
_____
Telephone

*Clerk of the Court*

By _____
                              Deputy Clerk

Date   05/14/2018

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오      የትርጉም ተርጓሚ ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133

Jane Doe 1, *et al*
_____
                                        Demandante

         contra

                                                        Número de Caso: _____
Kyle Renner
_____
                                        Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Brendan J. Klaproth, Klaproth Law PLLC                    *SECRETARIO DEL TRIBUNAL*
_____
Nombre del abogado del Demandante

406 5th St. NW, Suite 350
_____                Por: _____
Dirección                                                          Subsecretario
       Washington, DC 20001
_____

       202-618-2344
_____                Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오          ያማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

JANE DOE 1 et al
    Vs.                                 C.A. No.      2018 CA 003335 B
GEORGE WASHINGTON UNIVERSITY et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                       Chief Judge Robert E. Morin

Case Assigned to: Judge ROBERT R RIGSBY
Date: _May 14, 2018_
Initial Conference: 10:00 am, Friday, August 24, 2018
Location:   Courtroom 201
              500 Indiana Avenue N.W.
              WASHINGTON, DC 20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement.  The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available.  Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W.  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov.  *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles.  All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.  D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826.  Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch.  The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin

D.C. Superior Court
06/04/2018 11:08AM
Clerk of the Court

Form CA 1-A. Notice and Acknowledgment for Service by Mail



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

Jane Doe 1, *et al*
_____
*Plaintiff(s)*

v.

George Washington University, *et al*
_____
*Defendant(s)*

Case No: 2018 CA 003335 B
_____

### NOTICE

To (insert name and address of the party to be served):
Kyle Renner
2121 Eye Street NW
Washington, DC 20050
_____

The enclosed summons, complaint and initial order are served pursuant to Rule 4(c)(4) of the Superior Court Rules of Civil Procedure.

You must sign and date the Acknowledgement (below). If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate next to your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate next to your signature your authority.

If you do not complete and return the form to the sender within twenty (20) days after it has been mailed, you (or the other party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons, complaint and initial order in any other manner permitted by law.

If you do complete and return this form, you (or the other party on whose behalf you are being served) must answer the complaint within twenty (20) days after you have signed, dated and returned the form. If you fail to do so, judgment by default may be entered against you for the relief demanded in the complaint.

This Notice and Acknowledgment of Receipt of Summons, Complaint and Initial Order was mailed on (insert date):   5/15/2018   .

*Brenda Reginar*
_____            05/15/2018
_____
*Signature*                          *Date of Signature*

### ACKNOWLEDGMENT OF RECEIPT OF SUMMONS, COMPLAINT, AND INITIAL ORDER

I (print name)  Kyle Renner                  received a copy of the summons, complaint and initial order in the above captioned matter at (insert address):   George Washington University
2121 Eye Street NW
Washington, DC 20050

_____            6/1/18
_____
*Signature*     *Relationship to Defendant/Authority*   *Date of Signature*
*to Receive Service*

Para pedir una traducción, llame al (202) 879-4828        如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction
Để có một bài dịch, hãy gọi (202) 879-4828        ያማረኛ ተርጓሚ ለማግኘት (202) 879-4828 ይደውሉ        번역을 원하시면, (202) 879-4828 로 전화주십시요

Form CA 1-A: Notice and Acknowledgment of Service of Summons



### SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

Jane Doe 1, *et al*
_____
*Plaintiff(s)*

v.

Case No:   2018 CA 003335 B

George Washington University, *et al*
_____
*Defendant(s)*

### NOTICE

To (insert name and address of the party to be served):
George Washington University
2121 Eye Street N.W.
Washington, D.C. 20050
_____

    The enclosed summons, complaint and initial order are served pursuant to Rule 4(c)(4) of the Superior Court Rules of Civil Procedure.

    You must sign and date the Acknowledgement (below). If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate next to your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate next to your signature your authority.

    If you do not complete and return the form to the sender within twenty (20) days after it has been mailed, you (or the other party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons, complaint and initial order in any other manner permitted by law.

    If you do complete and return this form, you (or the other party on whose behalf you are being served) must answer the complaint within twenty (20) days after you have signed, dated and returned the form. If you fail to do so, judgment by default may be entered against you for the relief demanded in the complaint.

    This Notice and Acknowledgment of Receipt of Summons, Complaint and Initial Order was mailed on (insert date):   5/15/2018   .

_____                    05/15/2018
*Signature*                                  *Date of Signature*

### ACKNOWLEDGMENT OF RECEIPT OF SUMMONS, COMPLAINT, AND INITIAL ORDER

    I (print name) Daniel I. Prywes (on behalf of George Washington University)  received a copy of the summons, complaint and initial order in the above captioned matter at (insert address):   George Washington University
2121 Eye Street NW
Washington, DC 20050

_____    attorney                    6/4/18
*Signature*              *Relationship to Defendant/Authority*  *Date of Signature*
                        *to Receive Service*

Para pedir una traducción, llame al (202) 879-4828
Để có một bài dịch, hãy gọi (202) 879-4828

如需翻译,请打电话 (202) 879-4828
የአማርኛ ተርጓሚ ለማግኘት (202) 879-4828 ይደውሉ

Veuillez appeler au (202) 879-4828 pour une traduction
번역을 원하시면, (202) 879-4828 로 전화주십시요