UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
JANE DOE 1, et al.,                 )
                                    )
            Plaintiffs,             )
                                    )
    v.                              )    Civil Action No. 18-1391 (RBW)
                                    )
THE GEORGE WASHINGTON               )
UNIVERSITY, et al.,                 )
                                    )
            Defendants.             )
_____ )

**MEMORANDUM OPINION**

On February 26, 2020, the plaintiffs filed their Motion to Enforce Protective Order ("Pls.' Mot."), requesting that the Court "issue an order directing [the] [d]efendants to destroy all e[-]mails in their possession containing attorney-client communications between the [p]laintiffs and their lawyers." Pls.' Mot. at 1. Upon careful consideration of the parties' submissions,[1] the Court concludes that it must grant in part and deny in part the plaintiffs' motion.

### I.   BACKGROUND

On October 5, 2019, the Court ordered "the parties [to] serve document requests on or before November 15, 2019." Order at 1 (Oct. 5, 2019), ECF No. 37. Thereafter, the "[p]laintiffs submitted their First Request for Production of Documents to [GW]," and during the process of responding to the plaintiffs' request for production, the defendants "came across . . . e[-]mails exchanged between [the] [p]laintiffs and their counsel through [GW's] [ ] e[-]mail system."

---

[1] In addition to the filing already identified, the Court considered the following submissions in rendering its decision: (1) the Defendants' Opposition to Plaintiffs' Motion for a Protective Order ("Defs.' Opp'n"); (2) the Reply Brief in Support of Plaintiffs' Motion to Enforce Protective Order ("Pls.' Reply"); (3) the Defendant's Sur-Reply in Further Opposition to Plaintiffs' Motion for a Protective Order ("Defs.' Sur-Reply"); and (4) Defs.' Sur-Reply, Exhibit ("Ex.") 1 (Declaration of Jonathan A. Fozard) ("Fozard Decl.").

Defs.' Opp'n at 1–2. On February 19, 2020, counsel for the defendants notified the plaintiffs' counsel that the defendants located the e-mail communications, see Pls.' Mot., Exhibit ("Ex.") 1 (Letter to Brendan Klaproth from Daniel I. Prywes (Feb. 19, 2020)) at 1, and in response, the plaintiffs' counsel "assert[ed] [the] attorney-client privilege," and requested that counsel for the defendants destroy the e-mail communications identified by the defendants that were between the plaintiffs and their counsel, see id., Ex. 2 (E-mail to Daniel I. Prywes from Brendan Klaproth (Feb. 19, 2020)) at 3. When the defendants refused to destroy the e-mail communications absent a Court order, see id., Ex.2 (E-mail to Brendan Klaproth from Daniel I. Prywes (Feb. 20, 2020)) at 3, the plaintiffs filed their motion to enforce the Protective Order, see generally, Pls.' Mot., which is the subject of this Memorandum Opinion.

## II.  STANDARD OF REVIEW

The attorney-client privilege is designed to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). And, although the privilege "covers [ ] confidential communications between attorney and client," In re Sealed Case, 676 F.2d 793, 809 (D.C. Cir. 1982), "the privilege is not absolute," Feld v. Fireman's Fund Ins. Co., 292 F.R.D. 129, 137 (D.D.C. 2013). Both clients and lawyers can waive the attorney-client privilege, see Banneker Ventures, LLC v. Graham, 253 F. Supp. 3d 64, 71 (D.D.C. 2017), by disclosing confidential information to a third-party, see Convertino v. U.S. Dep't of Justice, 674 F. Supp. 2d 97, 109 (D.D.C. 2009). However, the disclosure of a communication covered by the attorney-client privilege "does not operate as a waiver . . . if (1) disclosure is inadvertent; (2) the holder of the privilege . . . took reasonable

2

steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error[.]" Fed. R. Evid. 502(b).

As another member of this Court noted in the context of e-mail communications between an employee and his lawyer exchanged through the employer's e-mail system, "[c]ase law in this jurisdiction is not directly on point[,] but New York gives the Court some direction." Convertino, 674 F. Supp. 2d at 110.[2] In such circumstances, "the question of privilege comes down to whether the intent to communicate in confidence was objectively reasonable," id. (citing In re Asia Glob. Crossing, Ltd., 322 B.R. 247, 258 (Bankr. S.D.N.Y. 2005)), and "[i]n order for documents sent through e-mail to be protected by the attorney-client privilege[,] there must be a subjective expectation of confidentiality that is found to be objectively reasonable," id. (citing Asia Glob. Crossing, 322 B.R. at 257). In determining whether the attorney-client privilege applies to information transmitted between an employee and his or her lawyer through the employer's e-mail system, four factors have been considered:

> (1) does the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or e-mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies?

---

[2] The plaintiffs note that "[t]he cases to which [the] [d]efendants cite[] [ ] all involve the use of a work-issued e[-]mail account where the employer prohibited personal use of the e[-]mail address or actively monitored the e[-]mail addresses and notified the employees of such." Pls.' Mot. at 5–6. However, the Court notes that the plaintiffs have not cited—nor was the Court able to find—any legal authority regarding whether a student/employee who uses a university-issued e-mail account to communicate with his or her attorney has waived the attorney-client privilege, as is the situation here. In fact, in support of their argument that they have not waived the attorney-client privilege when they communicated with their attorneys through their GW-issued e-mail accounts, the plaintiffs themselves rely on Convertino, which involved the issue of whether the attorney-client privilege was waived when an employee communicated with his attorney through his employer's e-mail system. The Court finds that the two situations are sufficiently analogous, such that the cases discussing whether the privilege is waived in the context of using an employer-issued e-mail account to communicate with a lawyer are persuasive to the Court's determination of whether the attorney-client privilege was waived in this case. And, this is particularly appropriate where the student is also an employee of the university.

Asia Glob. Crossing, 322 B.R. at 257 (citations omitted). "Each case should be given an individualized look to see if the party requesting the protection of the privilege was reasonable in its actions." Convertino, 674 F. Supp. 2d at 110; see also O'Connor v. Ortega, 480 U.S. 709, 718 (1987) ("Given the great variety of work environments, . . . the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis."). The party claiming the attorney-client privilege bears the burden of showing that the privilege has not been waived. See United States v. Philip Morris Inc., 212 F.R.D. 421, 424 (D.D.C. 2002); see also United Mine Workers of Am. Int'l Union v. Arch Mineral Corp., 145 F.R.D. 3, 6 (D.D.C. 1992) (citation omitted).

### III.   ANALYSIS

Here, the plaintiffs, with the exception of Jane Doe 1, did not have an objectively reasonable expectation of privacy in their e-mail communications with their attorneys that were sent and received through their GW-issued e-mail accounts. With respect to the first Asia Global Crossing factor—whether GW prohibited personal use of its GW-issued e-mail accounts—the plaintiffs are correct that "GW placed no caveat on the use of the school e[-]mail address for personal use." Pls.' Mot. at 6; see also id. at 7 ("GW [ ] does not have a policy prohibiting the personal use of university-issued e[-]mail addresses."); see generally Defs.' Opp'n, Ex. C (GW Email) (e-mail policy that does not contain language prohibiting the personal use of university-issued e-mail addresses). However, GW's e-mail policy cautions students that "[i]ndividuals have no right of personal privacy with respect to e[-]mail messages or attachments they send or receive using the GW e[-]mail system." Defs.' Opp'n, Ex. C (GW Email) at 3. And, regarding the second factor—whether GW monitored the use of its students' e-mails—GW's e-mail policy provided that it "may search, review, monitor[,] or copy any e[-]mail sent to or from a GW

4

e[-]mail account for approved purposes only, including without limitation[,] . . . [g]athering information potentially relevant to legal claims by or against [GW]." Defs.' Opp'n, Ex. C (GW Email) at 3. Moreover, although the plaintiffs' claim that "GW has not stated whether anyone from GW monitors the students' e[-]mail accounts," Pls.' Mot. at 6; see also id. at 7 ("GW does not have a policy to regularly monitor its student[s'] use of e[-]mail."), "most [c]ourts have not required evidence that the employer actually did so," but rather "the [ ] reservation of the right to do so has sufficed as a basis for concluding that [the] employees[] had no reasonable expectations of privacy," Hanson v. First Nat. Bank, Civ. Action No. 10-0906, 2011 WL 5201430, at *6 (S.D.W. Va. Oct. 31, 2011) (citations omitted); see also United States ex rel. Ray v. GSD&M Idea City LLC, Civ. Action No. 11-1154, 2012 WL 12925016, at *4 (N.D. Tex. May 15, 2012) ("Where, as here, a company has 'explicit and straightforward' guidelines addressing the monitoring of e-mail communications, an employee has no reasonable expectation of privacy in the e-mails, even if the company does not routinely enforce the monitoring policy.") (citation omitted). As to the third factor—whether third parties have a right of access to the e-mails—GW's e-mail policy is silent. See generally Defs.' Opp'n, Ex. C (GW Email) (e-mail policy that does not address whether third parties have a right of access to e-mails exchanged through the GW e-mail system).

Regarding the fourth and final factor—whether the plaintiffs were aware of GW's e-mail monitoring policy—contrary to the plaintiffs' claim that "GW never advised students that their e[-]mail addresses were being monitored," Pls.' Mot. at 6; see also id. at 7 (maintaining that the "[p]laintiffs had no knowledge that GW was monitoring e[-]mails or accessing their e[-]mails"), the actual record before the Court shows that when Jane Does 2 through 5 "opened their e[-]mail accounts, they accepted [the terms and conditions of] [GW's] Information Security Policy [that]

5

specifically references the e[-]mail policy," Defs.' Sur-Reply at 2; see Fozard Decl. ¶ 3 ("When students at [GW] first apply for a NetID account . . . , which includes an account on [GW's] e[-]mail system, they are required to 'click' on a link to accept the terms and conditions of [GW's] Information Security Policy."), and therefore, these plaintiffs were put on notice of GW's policy of monitoring GW-issued e-mail accounts,[3] see GSD&M Idea City, 2012 WL 12925016, at *3 ("Courts have found that this prong of the analysis does not require 'actual or direct' notification . . . of a [ ] policy governing e-mail communications sent or received on the [ ] network if the policy is available to the employee.") (citation omitted); see also In re Royce Homes, LP, 449 B.R. 709, 741 (Bankr. S.D. Tex. 2011) ("[A]ctual or direct notification to employees is

---

[3] On March 10, 2020, the plaintiffs and their counsel represented to the Court that they "had [n]ever seen [GW's] purported [e-mail] 'policy.'" Pls.' Reply at 3; see also id., Ex. 2 (Declaration of Brendan J. Klaproth in Support of Plaintiffs' Motion to Enforce Protective Order) ¶ 2 ("I had no knowledge of GW's 'Email Policy' until [the] [d]efendants filed its Opposition to Plaintiffs' Motion for a Protective Order on February 27, 2020. I had no knowledge that GW would monitor, access, or review communications between my clients and my firm."); id., Ex. 4 (Declaration of Jane Doe 2 in Support of Plaintiffs' Motion to Enforce Protective Order) ¶ 3 ("Never did the university provide me with any documentation that stated that they could read my e[-]mails, or ever inform me of this."); id., Ex. 5 (Declaration of Jane Doe 3 in Support of Plaintiffs' Motion to Enforce Protective Order) ¶ 3 (stating that she "never saw any e[-]mail policy from GW telling [her] this information"); id., Ex. 6 (Declaration of Jane Doe 4 in Support of Plaintiffs' Motion to Enforce Protective Order) ¶ 2 ("When I first received my GW e[-]mail and log-in information, I was not informed that my personal e[-]mails would be the property of GW. This was not made clear to me, nor do I think it was made clear to anyone. I have never seen nor read GW's e[-]mail policy, and I have never been provided with it by the school."); id., Ex. 7 (Declaration of Jane Doe 5 in Support of Plaintiffs' Motion to Enforce Protective Order) ¶¶ 2–3, 5 ("As a GW student, I was completely unaware of the GW's e[-]mail policy and the lack of privacy of e[-]mails while using the GW e[-]mail account until it was brought up during this lawsuit a few weeks ago [ ]. This e[-]mail policy was never distributed to students. GW has a long student policy and code of conduct. I am familiar with the code of conduct, and nowhere in the policy does it mention anything about GW's purported e[-]mail policy. I had no idea that GW has claimed the right, as a third party, to review my personal e[-]mails, especially when I trusted and believed that I would have confidentiality with my lawyers."). However, prior to using the GW e-mail system, the plaintiffs were provided with a link to GW's e-mail policy and were required to indicate that they have "read and accept[ed] the policies." Fozard Decl., Ex. A (Sample Application Form to Claim Your GW Email Address/NetID); see also id. ¶ 3. Therefore, "[i]n the absence of fraud or its equivalent, one is obligated by [her] contract, though signed without knowledge of its terms." Hart v. Vermont Inv. Ltd. P'ship, 667 A.2d 578, 582 (D.C. 1995) (citations omitted); see also Curtis v. Gordon, 980 A.2d 1238, 1244 (D.C. 2009) ("As a rule, 'one who signs a contract has a duty to read it and is obligated according to its terms.'") (quoting Pers Travel, Inc. v. Canal Square Assocs., 804 A.2d 1108, 1110 (D.C. 2002)); Selden v. Airbnb, Inc., Civ. Action No. 16-00933 (CRC), 2016 WL 6476934, at *4 (D.D.C. Nov. 1, 2016) (describing a "sign-in-wrap" agreement, which requires users who "sign[] up to use an internet product or service" to "accept[] . . . a separate agreement . . . before the user can access the service" as "an online adhesion contact"). "It is not enough to avoid a contract that one party signed it believing it did not contain what was plainly expressed therein." Hart, 667 A.2d at 582 (citation omitted).

6

unnecessary if the corporation has a communications policy that is memorialized.").[4]  However, with respect to Jane Doe 1, because the evidence submitted by the defendants does not clearly show whether Jane Doe 1 agreed to GW's e-mail policy, and if she did, what the terms of that policy were when that occurred, see Fozard Decl. ¶¶ 3–5 (indicating that Exhibit A to the declaration is a sample application form, which "has not changed since April 2016," but that Jane Doe 1 "accepted the University's terms and conditions . . . on May 9, 2014[,]" and noting that although Exhibit D to the declaration was the e-mail policy at GW in April and May 2016, it is unclear whether Exhibit D was the policy in May 2014 when Jane Doe 1 accepted the terms and conditions of GW's e-mail policy (emphasis added)), the Court finds that Jane Doe 1 was not placed on notice of GW's e-mail policy before she used the e-mail system, see Pls.' Reply, Ex. 3 (Declaration of Jane Doe 1 in Support of Plaintiffs' Motion to Enforce Protective Order) ¶¶ 3–4 (attesting that she has "never seen . . . and did not know of the GW e[-]mail policy 'throughout [her] entire time at the institution," that she does "not recall any GW administrator or employee ever sending [her] the e[-]mail policy, or informing [her] of the e[-]mail policy," and that she "had no knowledge that GW could monitor and review [her] e[-]mails and e[-]mails sent to [her]").

The plaintiffs' arguments in support of upholding the attorney-client privilege are unavailing.  They argue that "[b]y virtue of the Protective Order [in this case], any inadvertent disclosure made by [the] [p]laintiffs by using their university e[-]mail does not constitute a

---

[4] The plaintiffs argue that GW's argument "that the [attorney-client] privilege was waived simply by the fact that [the] [p]laintiffs used their university e[-]mail addresses . . . holds no water." Pls.' Mot. at 3.  In support of their argument, the plaintiffs rely on Convertino, where another member of this Court found that an employee who used his work e-mail account to communicate with his personal attorney did not waive the attorney-client privilege because "his expectations [of confidentiality] were reasonable." 674 F. Supp. 2d at 110.  However, the facts of Convertino are distinguishable from the facts present in this case because, unlike the plaintiffs in this case, the employee in Convertino "took steps to delete the e-mails as they were coming into his account," id., and "was not informed that [his] e[-]mail . . . was being collected by [his employer]," Pls.' Reply, Ex. 1 (Declaration of Jonathan Tukel) ¶ 14.

7

waiver of the 'attorney-client privilege,'" and that "[t]o the extent [that] the [p]laintiffs somehow waived the privilege merely by communicating with a GW e[-]mail address . . . , the Protective Order still provides a claw back for an inadvertent disclosure." Pls.' Mot. at 4.  However, the plaintiffs fail to acknowledge the scope of the clawback provision of the Protective Order, which states that "[t]he inadvertent disclosure of any document that is subject to the attorney-client privilege . . . shall not waive the protection or the privilege for either that document or for the subject matter of that document."  Stipulated Protective Order ¶ 6. As the defendants correctly note, "[t]his provision deals with the inadvertent disclosure of privileged documents from one party's counsel to the other party's counsel <u>during the discovery process</u> . . . [and] has no bearing on attorney-client communications [that were] made between a party's counsel and his clients before the lawsuit was filed[ ] and [that were] not exchanged between the parties' counsel during the discovery process." Defs.' Opp'n at 7.

       The plaintiffs further contend that "Rule 4.4 of the District of Columbia Rules of Professional Conduct requires that [the] defendants delete the privileged e[-]mails." Pls.' Mot. at 5 (capitalization removed).  However, the plaintiffs' reliance on Rule 4.4 is mistaken. Although, as the plaintiffs correctly note, Rule 4.4 states that "[a] lawyer who receives a writing relating to the representation of a client and knows, before examining the writing, that it has been inadvertently sent, shall not examine the writing, but shall notify the sending party and abide by the instructions of the sending party regarding the return or destruction of the writing," D.C. Rule of Prof'l Conduct 4.4(b), Comment 3 to the rule makes clear that "[w]hether the privileged status of a writing has been waived is a matter of law beyond the scope of these Rules," <u>id.</u>, cmt. 3. Therefore, Rule 4.4 offers no support for the plaintiffs' argument that they did not waive the

8

attorney-client privilege by communicating with their attorneys through the use of the GW e-mail system.

Accordingly, based upon consideration of the Asia Global Crossing factors, which the Court finds are equally applicable in the student/employee-university context, the Court concludes that the plaintiffs, with the exception of Jane Doe 1, effectively waived the attorney-client privilege when they used their GW-issued e-mail accounts to communicate with their attorneys. Cf. United States v. Finazzo, 682 F. App'x 6, 16 (2d Cir. 2017) (finding that "[t]he district court did not abuse its discretion in finding that [the employee] waived the privilege as to the e[-]mail" because the employer's policy, with which the employee was familiar, "specifically state[d] that employees should have no expectation of privacy when using [the company's e-mail system]") (citations omitted).

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiffs, with the exception of Jane Doe 1, waived the attorney-client privilege when they communicated with their attorneys through their GW-issued e-mail accounts. Accordingly, the Court must grant the plaintiffs' motion to enforce the Protective Order in this case as to Jane Doe 1 and deny the motion as to Jane Does 2 through 5.

**SO ORDERED** this 17th day of August, 2020.[5]

REGGIE B. WALTON
United States District Judge

---

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

9