## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE 1, <u>et al.</u>,          ) | |
|           ) | |
|      Plaintiffs,      ) | |
|           ) | |
|     v.           ) | Civil Action No. 18-1391 (RBW) |
|           ) | |
| THE GEORGE WASHINGTON   ) | |
| UNIVERSITY, <u>et al.</u>,       ) | |
|           ) | |
|      Defendants.     ) | |
|           ) | |

## <u>MEMORANDUM OPINION</u>

The plaintiffs bring this civil action, using the pseudonyms Jane Does 1 to 5, against

George Washington University ("GW") and Kyle Renner, a GW employee being sued in his

capacity as GW's General Operations Manager and the plaintiffs' supervisor (collectively, "the

defendants"), alleging violations of the District of Columbia's Human Rights Act,

D.C. Code §§ 2-1401–1404.04 (2001), <u>see</u> First Amended Complaint [a]nd Jury Demand ("Am.

Compl.") ¶¶ 116, 123, 133, 140; negligent training, supervision, and retention with respect to

GW only, <u>see id.</u> ¶ 145; and violations of Title IX of the Education Amendments Act of 1972

("Title IX"), 20 U.S.C. §§ 1681–88, <u>see id.</u> ¶¶ 149–50, 160.  <u>See also</u> <u>Doe 1 v. George Wash.</u>

<u>Univ.</u>, 369 F. Supp. 3d 49 (D.D.C. 2019) (Walton, J.) ("<u>Doe 2019</u>") (granting in part and

denying in part the defendants' motion to dismiss).

On February 26, 2020, while discovery was being conducted, the plaintiffs filed a motion

to enforce the protective order entered by the Court in this case, requesting that the Court "issue

an order directing [the d]efendants to destroy all e[-]mails in their possession containing

attorney-client communications between the [p]laintiffs and their lawyers."  Motion to Enforce

Protective Order ("Pls.' Prot. Order Mot.") at 1, ECF No. 49.  In response, on August 17, 2020, the Court issued a Memorandum Opinion ("the Court's August 17, 2020 Memorandum Opinion"), concluding that "the plaintiffs, with the exception of Jane Doe 1, waived the attorney-client privilege when they communicated with their attorneys through their GW-issued e-mail accounts."  Doe 1 v. George Wash. Univ., 480 F. Supp. 3d 224, 230 (D.D.C. 2020) (Walton, J.) ("Doe 2020").  Accordingly, the Court denied the motion as to Jane Does 2 through 5, and granted the motion as to Jane Doe 1.  See Order at 1 (Aug. 17, 2020), ECF No. 61.

On September 15, 2020, the plaintiffs[1] filed a motion for reconsideration or, in the alternative, for certification for an interlocutory appeal.  See Plaintiffs' Motion for Reconsideration, or in the Alternative, Motion to Certify for an Interlocutory Appeal ("Pls.' Recon. Mot.") at 1, ECF No. 64.  The plaintiffs ask the Court to either (1) "revise its [August 17, 2020 Memorandum] Opinion and Order to find that the e[-]mail communications sent and received by [the p]laintiffs with their attorney through their [GW]-issued e[-]mail are privileged communications, are not relevant, and must be destroyed by [the d]efendants[,]" or (2) "certify[] for interlocutory appeal the Court's August 17, 2020 [Memorandum Opinion and O]rder" and any "order denying the [p]laintiffs' [m]otion for [r]econsideration."  Id.  Upon careful consideration of the parties' submissions,[2] the Court concludes that it must deny the

---

[1] Because the Court granted the plaintiffs' motion for a protective order as to Jane Doe 1, see Order at 1 (Aug. 17, 2020), only Jane Does 2 through 5 filed the motion for reconsideration or, in the alternative, for certification for an interlocutory appeal, see Pls.' Recon. Mot. at 1.  However, for ease of reference, the Court will refer to Jane Does 2 through 5 as "the plaintiffs" in this Memorandum Opinion.

[2] In addition to the filing already identified, the Court considered the following submissions in rendering its decision: (1) the Defendants' Opposition to Plaintiffs' Motion for a Protective Order ("Defs.' Prot. Order Mot. Opp'n"), ECF No. 50; (2) the Reply Brief in Support of Plaintiffs Motion to Enforce Protective Order ("Pls.' Prot. Order Mot. Reply"), ECF No. 52; (3) the Defendant's Sur-Reply in Further Opposition to Plaintiffs' Motion for a Protective Order ("Defs.' Prot. Order Mot. Surreply"), ECF No. 54; (4) Defs.' Sur-Reply, Exhibit ("Ex.") 1

(continued . . .)

plaintiffs' motion for reconsideration and the plaintiffs' motion in the alternative for certification for an interlocutory appeal.

## I.   BACKGROUND

The Court previously described the relevant factual background in detail, see Doe 2019, 369 F. Supp. 3d at 56–62, and therefore will not reiterate that information again here.  The Court will, however, briefly discuss the procedural posture pertinent to the resolution of the motion addressed by this Opinion.

Discovery in this case began on October 8, 2019.  See Order at 1 (Oct. 9, 2019), ECF No. 37.  Pursuant to the Court's Initial Scheduling Order, the parties were required to "serve document requests on or before November 15, 2019."  Id.  During the process of responding to the plaintiffs' "[f]irst [r]equest for [p]roduction of [d]ocuments[,]" the defendants "came across . . . e[-]mails exchanged between [the p]laintiffs and their counsel through [GW's] [ ] e[-]mail system."  Doe 2020, 480 F. Supp. 3d at 225 (internal quotation marks omitted).  "On February 19, 2020, counsel for the defendants notified the plaintiffs' counsel that the defendants [had] located the e-mail[s.]"  Id.  "[I]n response, the plaintiffs' counsel asserted the attorney-client privilege, and requested that counsel for the defendants destroy the e-mail[s] [ ] identified by the defendants that were between the plaintiffs and their counsel[.]"  Id. (internal quotation marks omitted).  After "the defendants refused to destroy the e-mail[s] [ ] absent a Court order,

---

(. . . continued)
(Declaration of Jonathan A. Fozard ("Fozard Decl.")), ECF No. 54-1; (5) the Plaintiffs' Statement of Points and Authorities in Support of Plaintiffs' Motion for Reconsideration, or in the Alternative, Motion to Certify for Interlocutory Appeal ("Pl.'s Recon. Mem."), ECF No. 64-1; (6) the Defendants' Opposition to Plaintiffs' Motion for Reconsideration, or in the Alternative, Motion to Certify for an Interlocutory Appeal ("Defs.' Recon. Opp'n");
(7) Defs.' Recon. Opp'n, Ex. 1 (Declaration of Jonathan A. Fozard ("2d Fozard Decl.")), ECF No. 67-2; and (8) the Plaintiffs' Reply in Support of Plaintiffs' Motion for Reconsideration, or in the Alternative, Motion to Certify for an Interlocutory Appeal ("Pls.' Recon. Reply"), ECF No. 69.

the plaintiffs filed their motion to enforce the protective order[.]" <u>Id.</u> (citations omitted).  <u>See</u> <u>generally</u> Pls.' Prot. Order Mot.

In their motion, the plaintiffs argued that the protective order entered in this case, <u>see</u> Protective Order at 1 (Nov. 5, 2019), ECF No. 41, and Rule 4.4 of the District of Columbia Rules of Professional Conduct required the defendants to destroy the e-mails because they were protected by the attorney-client privilege.  <u>See</u> Pls.' Prot. Order Mot. at 4–5.  In response, the defendants argued that the e-mails were not protected by the attorney-client privilege because the "[p]laintiffs could not have reasonably expected that e[-]mails sent through the [GW] e[-]mail system would be confidential, especially given [GW's] e[-]mail policy stating otherwise," and (2) the "[p]laintiffs' counsel should have known not to communicate attorney-client information over [GW's] e[-]mail system if he desired confidential treatment."  Defs.' Prot. Order Opp'n at 1.

In its August 17, 2020 Memorandum Opinion, the Court determined that, in the context of this case, like "the context of e-mail communications between an employee and his [or her] lawyer exchanged through the employer's e-mail system, . . . 'the question of privilege comes down to whether the intent to communicate in confidence was objectively reasonable.'" <u>Doe 2020</u>, 480 F. Supp. 3d at 226 (quoting <u>In re Asia Global Crossing, Ltd.</u>, 322 B.R. 247, 258 (Bankr. S.D.N.Y. 2005)).  The Court applied the following factors from <u>In re Asia Global Crossing, Ltd.</u>, which have been broadly adopted by courts considering similar issues:

> (1) does the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or e-mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies?

322 B.R. at 257.  <u>See</u> <u>Doe 2020</u>, 480 F. Supp. 3d at 226.

Regarding the first two <u>Asia Global Crossing</u> factors, the Court determined that, although "the plaintiffs are correct that GW placed no caveat on the use of the school e-mail address for personal use[,]" "GW's e-mail policy cautions students that individuals have no right of personal privacy with respect to e-mail messages or attachments they send or receive using the GW e-mail system," and "GW's e-mail policy provide[s] that it may search, review, monitor, or copy any e-mail sent to or from a GW e-mail account for approved purposes only, including without limitation, gathering information potentially relevant to legal claims by or against GW." <u>Id.</u> at 227 (internal quotation marks and alterations omitted).  "As to the third factor—whether third parties have a right of access to the e-mails[,]" the Court concluded that "GW's e-mail policy is silent." <u>Id.</u>  However, "[r]egarding the fourth and final factor—whether the plaintiffs were aware of GW's e-mail monitoring policy[,]" the Court determined that the plaintiffs "accepted the terms and conditions of GW's Information Security Policy that specifically references the e-mail policy, and therefore, these plaintiffs were put on notice of GW's policy of monitoring GW-issued e-mail accounts[.]" <u>Id.</u> (internal quotation marks, citations, and alterations omitted). Accordingly, the Court concluded that "the plaintiffs, with the exception of Jane Doe 1,[3] did not have an objectively reasonable expectation of privacy in their e-mail communications with their attorneys that were sent and received through their GW-issued e-mail accounts[.]" <u>Id.</u>

The Court also rejected the plaintiffs' arguments that the defendants were obligated to delete the e-mails due to either the clawback provision in the Protective Order in this case or Rule 4.4 of the District of Columbia Rules of Professional Conduct. <u>See id.</u> at 229 (concluding

---

[3] The Court concluded "with respect to Jane Doe 1" that "because the evidence submitted by the defendants does not clearly show whether Jane Doe 1 agreed to GW's e-mail policy, and if she did, what the terms of that policy were when that occurred, . . . Jane Doe 1 was not placed on notice of GW's e-mail policy before she used the e-mail system[,]" and therefore Jane Doe 1 did not waive the attorney-client privilege with respect to e-mails sent to or from her on GW's e-mail system. <u>Doe 1</u>, 480 F. Supp. 3d at 228–30.

that the clawback provision in the Protective Order did not apply because the provision "has no

bearing on attorney-client communications that were made between a party's counsel and his

clients before the lawsuit was filed and that were not exchanged between the parties' counsel

during the discovery process" (alterations omitted)); id. (concluding that Rule 4.4 was

inapplicable because "whether the privileged status of a writing has been waived is a matter of

law beyond the scope of the [Rules of Professional Conduct]" (alterations omitted)).  Therefore,

concluding "that the plaintiffs, with the exception of Jane Doe 1, waived the attorney-client

privilege[,]" the Court granted the plaintiffs' motion as to Jane Doe 1, but denied the motion as

to Jane Does 2 through 5.  See id. at 230.

## II.      STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 54(b), any order or decision that does not

constitute a final judgment "may be revised at any time before the entry of a judgment

adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).

Although a "district court has 'broad discretion to hear a motion for reconsideration brought

under Rule 54(b),'" Univ. of Colo. Health at Mem'l Hosp. v. Burwell, 164 F. Supp. 3d 56, 62

(D.D.C. 2016) (quoting Isse v. Am. Univ., 544 F. Supp. 2d 25, 29 (D.D.C. 2008)), it should grant

a motion for reconsideration of interlocutory orders only "as justice requires," Capitol Sprinkler

Inspection, Inc. v. Guest Servs., Inc., 630 F.3d 217, 227 (D.C. Cir. 2011) (quoting Greene v.

Union Mut. Life Ins. Co. of Am., 764 F.2d 19, 22–23 (1st Cir. 1985)).

In determining whether "justice requires" reversal of a prior interlocutory order, courts

assess circumstances such as "whether the court 'patently' misunderstood the parties, made a

decision beyond the adversarial issues presented, [or] made an error in failing to consider

controlling decisions or data[;] or whether a controlling or significant change in the law has

occurred." In Def. of Animals v. Nat'l Insts. of Health, 543 F. Supp. 2d 70, 75 (D.D.C. 2008)

(quoting Singh v. George Wash. Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005)); see Davis v.

Joseph J. Magnolia, Inc., 893 F. Supp. 2d 165, 168 (D.D.C. 2012) ("[A] motion for

reconsideration is discretionary and should not be granted unless the movant presents either

newly discovered evidence or errors or law or fact that need correction.").  Motions for

reconsideration are not vehicles for either reasserting arguments previously raised and rejected

by the court or presenting arguments that should have been raised previously with the court.  See

Estate of Gaither ex rel. Gaither v. District of Columbia, 771 F. Supp. 2d 5, 10 & n.4

(D.D.C. 2011).  Finally, "[t]he burden is on the moving party to show that reconsideration is

appropriate and that harm or injustice would result if reconsideration were denied."  U.S. ex rel.

Westrick v. Second Chance Body Armor, Inc., 893 F. Supp. 2d 258, 268 (D.D.C. 2012) (quoting

Husayn v. Gates, 588 F. Supp. 2d 7, 10 (D.D.C. 2008)).

### III.     ANALYSIS

The Court begins its analysis with the plaintiffs' motion for reconsideration and then

proceeds to the plaintiffs' motion in the alternative for certification for an interlocutory appeal.

### A.     The Plaintiffs' Motion for Reconsideration

The plaintiffs make three arguments in support of their motion for reconsideration:

(1) "new evidence shows that the plaintiffs' use of their GW-issued e[-]mail account[s] to

communicate with their attorneys was 'objectively reasonable[,]'" Pls.' Recon. Mem. at 4

(capitalization omitted); (2) the e-mails "are not relevant" within the meaning of Federal Rule of

Civil Procedure 26(b)(1), id. at 6 (capitalization omitted); and (3) "the Court did not consider

[the plaintiffs'] assertion of the work-product privilege[,]" id. at 8 (capitalization omitted).  In

response, the defendants first argue that the plaintiffs present no arguments that could not have

been raised in their original motion for a protective order, and therefore the Court should not

consider any of these arguments,[4] see Defs.' Recon. Opp'n at 4, and then raise individual

counter-arguments to each of the plaintiffs' arguments, see generally id.  The Court addresses

each of the plaintiffs' arguments and the defendants' responses in turn.

1.  **The Plaintiffs' Argument that New Evidence Shows that Their Use of Their GW-issued E-mail Accounts to Communicate with Their Attorneys Was Objectively Reasonable**

First, the plaintiffs argue that "new evidence in the form of witness deposition testimony

has demonstrated that [the p]laintiffs' use of their GW-issued e[-]mail account[s] to

communicate with their attorneys was 'objectively reasonable'" because three former GW

students "have now testified that they [also] had 'no prior knowledge' that GW reviewed

students' e[-]mails[.]"  Pls.' Recon. Mem. at 1.  In response, the defendants argue that "[t]he

testimony of these non-party deponents is irrelevant" because "[t]he relevant question is whether

[the p]laintiffs' expectation of privacy was reasonable, and[,] as the Court found, [the p]laintiffs

were on notice of [GW's] e[-]mail policy and bound by it."  Def.'s Recon. Opp'n at 3 (emphasis

omitted).  The defendants further argue that "although the three non-party deponents testified

that they were not aware that their e[-]mails were subject to review for litigation purposes, in

actuality[,] the deponents accepted the terms and conditions of [GW's] e[-]mail policy when they

established their e[-]mail[] accounts, just as [the plaintiffs] did."  Id. (emphasis omitted).

The Court agrees with the defendants that the new evidence presented by the plaintiffs

does not merit reconsideration of the Court's ruling.  In its August 17, 2020 Memorandum

Opinion, applying the four factors from Asia Global Crossing, the Court concluded that "the

---

[4] Because the Court concludes that none of the arguments presented in the plaintiffs' motion for reconsideration are meritorious, see infra Section III.A.1–4, it need not reach the defendants' argument that the arguments now raised by the plaintiffs should have been raised in their motion for a protective order and, therefore, are not appropriately raised in a motion for reconsideration, see Defs.' Recon. Opp'n at 4.

plaintiffs, with the exception of Jane Doe 1, did not have an objectively reasonable expectation of privacy in their e-mail communications with their attorneys that were sent and received through their GW-issued e-mail accounts." Doe 2020, 480 F. Supp. 3d at 227.  This conclusion was supported by the Court's determination in regards to the fourth Asia Global Crossing factor that the "plaintiffs were put on notice of GW's policy of monitoring GW-issued e-mail accounts" by "GW's e-mail monitoring policy[.]" Id. at 227–28.

The three depositions of other GW students identified by the plaintiffs do not undermine the Court's conclusion that the "plaintiffs were put on notice of GW's policy of monitoring GW-issued e-mail accounts" by "GW's e-mail monitoring policy[.]" Id.  As the Court noted in its August 17, 2020 Memorandum Opinion, "[c]ourts have found that this prong of the analysis does not require 'actual or direct' notification . . . of a [ ] policy governing e-mail communications sent or received on the [ ] network if the policy is available to the employee." Id. at 228 (quoting U.S. ex rel. Ray v. GSD&M Idea City LLC, Civil Action No. 3:11-cv-1154-O, 2012 WL 12925016, at *3 (N.D. Tex. May 15, 2012)).  Here, despite the plaintiffs' assertions that they "had no knowledge that GW was monitoring [their] e[-]mails or accessing their e[-]mails[,]" Pl.'s Prot. Order Mot. at 7, "prior to using the GW e-mail system, [Jane Does 2 through 5] were provided with a link to GW's e-mail policy and were required to indicate that they have 'read and accept[ed] the policies[,]'" Doe 2020, 480 F. Supp. 3d at 227 n.3 (quoting Fozard Decl., Ex. A (Sample Application Form to Claim Your GW Email Address/NetID)).  See Fozard Decl. ¶¶ 4–5 (stating that GW "records show that each of the [p]laintiffs in this case accepted [GW's] terms and conditions [of GW's Information Security Policy] when they signed up for their [GW] e[-]mail accounts" and that the Information Security "Policy specifically references the 'GW Mail Policy' and provides a link to it" ).  Accordingly,

the plaintiffs, with the exception of Jane Doe 1, "were put on notice of GW's policy of monitoring GW-issued e-mail accounts[,]" <u>Doe 2020</u>, 480 F. Supp. 3d at 227.

Moreover, as the defendants correctly note, <u>see</u> Def.'s Recon. Opp'n at 3, evidence regarding the three additional students is irrelevant to the Court's consideration of whether the plaintiffs were put on notice of GW's e-mail policy.  <u>See</u> <u>Asia Global Crossing</u>, 322 B.R. at 257 (listing the fourth factor as whether "the corporation notif[ied] <u>the employee</u>, or [whether] <u>the</u> <u>employee</u> [was] aware, of the use and monitoring policies" (emphasis added)).  Accordingly, the Court concludes that the testimony of the three additional students that they were unfamiliar with GW's e-mail policy does not merit reconsideration of its ruling.[5]

### 2.  The Plaintiffs' Argument that the Communications Are Not Relevant Under Federal Rule of Civil Procedure 26

Second, the plaintiffs argue that "the Court need not wade into the deep issue of privilege because the [e-]mails sought by [the d]efendants are irrelevant[ under Federal Rule of Civil Procedure 26(b)(1),]" Pls.' Recon. Mem. at 6, because they "relate to 'case planning' and do not bear on any claim or defense in this lawsuit[,]" <u>id.</u> at 7.  In response, the defendants argue that they "do[] not seek 'discovery' of the [e-]mails at issue because the e[-]mails were already

---

[5] The plaintiffs do not address the <u>Asia Global Crossing</u> factors in this portion of their motion, <u>see</u> Pls.' Recon. Mot. at 4–6, instead arguing generally that this evidence "overwhelmingly demonstrates that [the p]laintiffs' expectation that their communications with their attorneys [were privileged] was objectively reasonable[,]" <u>id.</u> at 6.  The Court concluded in its August 17, 2020 Memorandum Opinion that applying the <u>Asia Global Crossing</u> factors to this case was appropriate because "the two situations are sufficiently analogous, such that the cases discussing whether the privilege is waived in the context of using an employer-issued e-mail account to communicate with a lawyer are persuasive to the Court's determination of whether the attorney-client privilege was waived in this case[,] . . . particularly [ ] where[, as here,] the student is also an employee of the university." <u>Doe 2020</u>, 480 F. Supp. 2d at 226 n.2.  To the extent that the plaintiffs argue that the testimony of the three additional students demonstrates the "objective[] reasonable[ness,]" Pls.' Recon. Mot. at 6, of the plaintiffs' belief that their communications with their attorneys through the GW e-mail system were confidential, such that the Court need not consider the <u>Asia Global Crossing</u> factors, the plaintiffs present no case law to support this approach, <u>see generally id.</u>; Pls.' Recon. Reply. Moreover, because the three additional students—like the plaintiffs—were notified of GW's e-mail policy, <u>see</u> 2d Fozard Decl. ¶ 4 (stating that the three additional students "accepted [GW's] terms and conditions when they signed up for their [GW] e[-]mail accounts"), it would also not be objectively reasonable for them to believe that their communications through the use of their GW-issued e-mail accounts were not subject to review by GW, despite what they said during their depositions.

within [GW's] possession and control on [its] e[-]mail system (though not reviewed) before [the p]laintiffs filed their Complaint[,]" and, accordingly, Rule 26(b)(1)'s relevance standard does not apply.  Defs.' Recon. Opp'n at 4.  For the following reasons, the Court agrees with the defendants that Rule 26(b)(1) does not apply to the e-mails.

The Court begins by clarifying the scope of Rule 26(b).  Rule 26(b) is part of the set of rules that govern the civil discovery process in federal courts.  See Fed. R. Civ. P. 26–37.  Discovery is intended as the means by which a "party may compel the other to disgorge whatever facts he[, she, or it] has in his[, her, or its] possession[,]" because "[m]utual knowledge of all of the relevant facts gathered by both parties is essential to proper litigation[,]" Hickman v. Taylor, 329 U.S. 495, 507 (1947).  This "disgorge[ment,]" id., generally occurs through the mechanisms set forth in the Federal Rules of Civil Procedure, namely depositions, see Fed. R. Civ. P. 27–28, 30–32; interrogatories, see Fed. R. Civ. P. 33; document requests, see Fed. R. Civ. P. 34; and requests for admission, see Fed. R. Civ. P. 36.[6]

Rule 26(b)(1) sets forth the scope of discovery, stating that

---

[6] These devices, and the procedures set forth in the Federal Rules that govern them, show that discovery is intended as a means of allowing parties to obtain information from other parties.  Under Rule 26(a)(1), parties first provide initial disclosures "to the other parties[,]" including the production of copies of "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses[.]"  Fed. R. Civ. P. 26(a)(1) (emphasis added).  Rule 26(a)(1)(A)(ii), which "applies only with respect to documents that are within the custody or control of the disclosing party within the meaning of Rule 34[,]" allows the "other parties to make informed decisions about which documents they should request be produced pursuant to Rule 34[,]"  8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2053 (3d ed. 2021).  Accordingly, a party provides a Rule 26(a)(1)(A)(ii) initial disclosure regarding a document that it has in its "custody or control[,]" id., and then the opposing party is able to determine whether he, she, or it wishes to seek access to that document by means of a document request.

Rule 34, which governs document requests, also provides a procedure designed to obtain information from another party.  See Fed. R. Civ. P. 34.  Under Rule 34(a)(1), "[a] party may serve on any other party a request within the scope of Rule 26(b) . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . items in the responding party's possession, custody, or control[,]" including "any designated documents or electronically stored information" or "any designated tangible things[.]"  Fed. R. Civ. P. 34(a)(1) (emphasis added).  Once again, this is a mechanism by which one party obtains information from another party that is in that other party's "possession, custody, or control[.]"  Id.

> [p]arties may <u>obtain</u> discovery regarding any nonprivileged matter that is relevant
> to any party's claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the amount in
> controversy, the parties' relative access to relevant information, and whether the
> burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (emphasis added).  This Rule, which governs the process of one party

"obtain[ing] discovery" from another party, <u>id.</u>, limits what a party may acquire from another

party during the discovery process.  <u>See</u> <u>Obtain</u>, Black's L. Dictionary ("[t]o bring into one's

own possession; to procure, esp[ecially] through effort"); <u>Obtain</u>, Oxford Eng. Dictionary,

https://www.oed.com/view/Entry/130002?redirectedFrom=obtain#eid (last visited

Nov. 17, 2021) (defining "obtain" as "[t]o come into the possession of; to procure;" or "to get,

acquire, or secure"); <u>Obtain</u>, Merriam-Webster.com, https://www.merriam-

webster.com/dictionary/obtain (last visited Nov. 17, 2021) ("to gain or attain usually by planned

action or effort").  Accordingly, the Court concludes that Rule 26(b)(1), and its relevance

requirement, only apply to the extent that the information is being sought or received through the

discovery process, meaning through the "devices for discovery[,]" <u>id.</u>, set forth in Federal Rules

of Civil Procedure 26 through 37.[7]

Here, however, as the defendants correctly argue, <u>see</u> Defs.' Recon. Opp'n at 4, the

e-mails at issue were not "obtain[ed]" as part of "discovery[,]" Fed. R. Civ. P. 26(b)(1).  The

plaintiffs are correct, <u>see</u> Pls.' Recon. Mem. at 4–5, that the defendants discovered the e-mails as

part of searching their systems for discoverable information to produce to the plaintiffs during

discovery in this case.  <u>See</u> Defs.' Prot. Order Mot. Opp'n at 2 (noting that, in response to a

document request from the plaintiffs, its "counsel collected from the GW e[-]mail system a large

number of e[-]mails of the [p]laintiffs and others that could be responsive to the [d]ocument

---

[7] The Court notes that neither party presents any authority to suggest that Rule 26(b)(1) should apply outside of the
discovery process.  <u>See generally</u> Pls.' Recon. Mem.; Defs.' Recon. Opp'n; Pls.' Recon. Reply.

[r]equests[,]" and, "[d]uring the course of collecting documents for this purpose, [the

d]efendants' discovery team came across [the e[-]mails at issue here]").  However, the defendants

located these e-mails in GW's "e[-]mail system[,]" id., because the e-mails were originally

"sen[t] or receive[d] . . . through the GW e-mail system[,]" id., Ex. C (GW E-mail ("GW E-mail

Pol'y")) at 1.  They were not information sought or "obtain[ed,]" Fed. R. Civ. P. 26(b)(1), from

another party during discovery.[8]

The plaintiffs argue that the e-mails should be treated like discovery that the plaintiffs

had produced to the defendants as part of this litigation because the defendants located the

e-mails while performing their discovery obligations.  See Pls.' Recon. Reply at 5 (arguing that

"there is no other reason for GW to be snooping in [the p]laintiffs' e[-]mails").  However, they

do not present—and the Court is not aware of—any authority to support the proposition that if a

party locates information in its possession for the first time as part of a search in response to a

discovery request, it may only continue to possess the information if it is relevant to the litigation

within the meaning of Rule 26(b)(1).  See id. at 4–5; Pls.' Recon. Mem. at 6–8.

Accordingly, because the e-mails were in GW's possession due to reasons having nothing

to do with the acquisition of e-mails from the plaintiffs in conjunction with the discovery

---

[8] The Court further notes that this reality aligns with the Court's determination in its August 17, 2020 Memorandum Opinion, see Doe 2020, 480 F. Supp. 3d at 229, regarding the plaintiffs' argument that the clawback provision in the Protective Order required return of the e-mails, see Pls.' Prot. Order Mot. at 4 (arguing that "[t]o the extent [that] the [p]laintiffs somehow waived the privilege merely by communicating with a GW e[-]mail address . . . , the Protective Order still provides a claw back for an inadvertent disclosure").  In concluding that the clawback provision did not apply, the Court distinguished between the e-mails, which were "attorney-client communications . . . made between a party's counsel and his clients before the lawsuit was filed[,]" and communications covered by the clawback provision, i.e., communications that were "inadvertent[ly] disclos[ed] . . . from one party's counsel to the other party's counsel during the discovery process[.]"  Doe 2020, 480 F. Supp. 3d at 229 (emphasis added).  Thus, as it does here, the Court concluded that the e-mails at issue were not part of "the discovery process[.]"  Id.

process, the Court concludes that Rule 26(b)(1) does not require the defendants to destroy the

e-mails.[9]

### 3. The Plaintiffs' Argument that, Even If They Waived the Attorney-Client Privilege, They Did Not Waive the Work-Product Protection Because the Work-Product Protection Is a Stronger Protection than the Attorney-Client Privilege

The plaintiffs next argue that, even if they waived the attorney-client privilege, the

Court's August 17, 2020 Memorandum Opinion "did not analyze [the p]laintiffs' assertion of

[the] work-product protection" and "one of the documents at issue here is an 'attorney draft of

[the] Complaint containing mental impressions and opinions of counsel[,]" which "is pure

opinion work product that is undiscoverable."  Pls.' Mot. at 8–9; see also Pls.' Reply at 7–10

(arguing that the work-product protection applies to the e-mails).  For the following reasons, the

Court concludes that the e-mails are not entitled to the work-product protection.

As the plaintiffs correctly note, "pure opinion work product [ ] is undiscoverable."  See

Pls.' Mot. at 9.  "The Supreme Court established the work-product doctrine in Hickman . . . ,

which held that an attorney's notes recording his interviews with witnesses to the

litigation-prompting incident were protected from discovery."  United States v. Deloitte LLP,

610 F.3d 129, 134 (D.C. Cir. 2010) (citing Hickman, 329 U.S. at 511–12).  "The work-product

doctrine announced in Hickman was subsequently partially codified in" Rule 26(b)(3):

> (A) Documents and Tangible Things.  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

---

[9] Because the Court concludes that Rule 26 does not apply to the e-mails due to the fact that they were already in GW's possession, it does not reach the plaintiffs' arguments that, were Rule 26 to apply, the e-mails would not be relevant.  See Pls.' Mot. at 7 (arguing the e-mails "relate to 'case[-]planning and do not bear on any claim or defense in this lawsuit"); Pls.' Reply at 6–7 (same).

Id. (quoting Fed. R. Civ. P. 26(b)(3)(A)).  Because "opinion work product[] 'is virtually

undiscoverable[,]'" id. (quoting Dir., Off. of Thrift Supervision v. Vinson & Elkins, LLP,

124 F.3d 1304, 1307 (D.C. Cir. 1997)), even when applying Rule 26(b)(3)(A)(ii)—which

"allows a court to order disclosure [of work product] when the requesting party can show a

'substantial need' for the material and an inability to procure equivalent information 'without

undue hardship[,]'" id. at 135 (quoting Fed. R. Civ. P. 26(b)(3)(A))—the court "must still

'protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a

party's attorney or other representative concerning the litigation[,]'" id. (quoting

Fed. R. Civ. P. 26(b)(3)(B)).

 Here, although the e-mails containing opinion work product may be "virtually

undiscoverable[,]" id. (internal quotation marks omitted), the defendants are not trying to

discover them.  As the Court noted above, see supra Section III.A.2, the e-mails were in GW's

possession, rather than being sought from the plaintiffs by the defendants through discovery.

Accordingly, although the work-product protection may shield the e-mails from discovery, see

Fed. R. Civ. P. 26(b)(3) (setting forth when "a party may [ ] discover documents or tangible

things that are prepared in anticipation of litigation" (emphasis added)); Hickman, 329 U.S.

at 510 (holding that "an attempt, without purported necessity or justification, to secure"

documents "prepared or formed by an adverse party's counsel in the course of his legal

duties . . . falls outside the arena of discovery and contravenes the public policy underlying the

orderly prosecution and defense of legal claims" (emphasis added)), the protection does not

preclude the defendants from reading e-mails that are in their possession for reasons unrelated to

the discovery process.

The plaintiffs having failed to present any authority supporting the position that the work-product doctrine extends to mandating destruction of documents disclosed to or obtained by the opposing party outside of the discovery context, <u>see generally</u> Pls.' Recon. Mem.; Pls.' Recon. Reply, the Court concludes that the plaintiffs' arguments regarding the work-product protection do not merit reconsideration of the Court's ruling.[10]

### 4. The Plaintiffs' Argument that, to the Extent It Applies, GW's E-mail Policy Is an Unconscionable Contract of Adhesion

Finally, the plaintiffs briefly argue that, to the extent that the plaintiffs' acceptance of GW's e-mail policy supports a waiver of the attorney-client privilege, <u>see Doe 2020</u>, 480 F. Supp. 3d at 227, GW's e-mail policy is "a contract of adhesion and thus [(1)] procedurally unconscionable" because the plaintiffs, as "students[,] are required to have a [GW] e[-]mail address[,]" and (2) "substantively unconscionable" because it results in "an unknowing silent waiver of the attorney-client privilege or other private communications[.]" Pls.' Recon. Mem. at 4 n.3 (citing <u>Ruiz v. Millenium Square Residential Ass'n</u>, 156 F. Supp. 3d 176, 181 (D.D.C. 2016)); <u>see</u> Pls.' Recon. Reply at 10–11.

"A contract of adhesion is defined generally as one imposed upon a powerless party, usually a consumer, who has no real choice but to accede to its terms." <u>Ass'n of Am. Med. Colls. v. Princeton Review, Inc.</u>, 332 F. Supp. 2d 11, 16 (D.D.C. 2004) (internal quotation marks

---

[10] In response to the defendants' argument that the plaintiffs waived any work-product protection because "[a] party [ ] waives the work-product privilege if it discloses work product to [ ] an adverse party[,]" Defs.' Opp'n at 5, the plaintiffs argue that "there has not actually been a 'voluntary disclosure' to [the d]efendants" because the "[d]efendants have not learned the 'gist' of the documents' contents[.]" Pls.' Reply at 7–8 (quoting <u>Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash.</u>, 103 F.R.D. 52, 63 (D.D.C. 1984)). However, in light of the Court's earlier conclusion that access to e-mails within the defendants' possession does not constitute discovery and, therefore, the work-product protection does not apply, <u>see supra</u> Section III.A.3, the Court need not address whether GW's access to the e-mails, despite not having read them, constitutes a voluntary disclosure that would waive the protection. <u>Cf.</u> <u>Long v. Marubeni Am. Corp.</u>, 2006 WL 2998671, at *4 (S.D.N.Y. Oct. 19, 2006) (concluding that when the defendant "discovered these communications while reviewing [its] computers to fulfill [its] disclosure obligations in this litigation[,]" the voluntary disclosure doctrine did not apply because "the plaintiffs did not 'disclose the e-mail messages to the defendants during the pretrial discovery phase of the litigation'").

omitted).  "In the District of Columbia, '[a] party seeking to avoid a contract because of unconscionability must prove two elements: an absence of meaningful choice on the part of one of the parties[,] together with contract terms which are unreasonably favorable to the other party.'"  Ruiz, 156 F. Supp. 3d at 181 (quoting Curtis v. Gordon, 980 A.2d 1238, 1244 (D.C. 2009)).

Here, in the absence of evidence that "the services could not be obtained elsewhere[,]" Ruiz, 156 F. Supp. 3d at 181, the Court cannot conclude that GW's e-mail policy is procedurally unconscionable.  Even if GW students like the plaintiffs "are required to have a [GW] e[-]mail address," Pls.' Recon. Reply at 10, which requires consenting to GW's e-mail policy,[11] there is no evidence that students are not permitted to have other e-mail addresses, or that they could not have communicated with their attorneys through non-GW e-mail addresses or other forms of communication, see generally Pls.' Recon. Mem.; Pls.' Recon. Reply.  Therefore, the Court concludes that the plaintiffs have not adequately shown that GW's e-mail policy is a contract of adhesion.

Accordingly, the Court concludes that it must deny the plaintiffs' motion for reconsideration.[12]

**B.     The Plaintiffs' Motion in the Alternative for Certification for Interlocutory Appeal**

The Court now turns to the plaintiffs' motion in the alternative for "the Court [to] certify [its August 17, 2020 Memorandum Opinion and] Order[, as well as this Memorandum Opinion

---

[11] As the Court noted in its August 17, 2020 Memorandum Opinion, the defendants provided a declaration stating that, "[w]hen students at GW first apply for a NetID account, which includes an account on GW's e-mail system, they are required to 'click' on a link to accept the terms and conditions of" GW's e-mail policy.  Doe 2020, 480 F. Supp. 3d at 227 (citing Fozard Decl. ¶ 3).

[12] The Court notes that its rulings in its August 17, 2020 Memorandum Opinion and this Memorandum Opinion that the plaintiffs' e-mail communications with their attorneys are neither privileged nor entitled to the work-product protection do not address whether these e-mails would be admissible at trial.

and accompanying Order,] for interlocutory appeal[,]" Pls.' Recon. Mem. at 9–10.  Pursuant to

28 U.S.C. § 1292(b),

> [w]hen a district judge, in making in a civil action an order not otherwise
> appealable under this section, shall be of the opinion that such order involves a
> controlling question of law as to which there is substantial ground for difference
> of opinion and that an immediate appeal from the order may materially advance
> the ultimate termination of the litigation, he shall so state in writing such order.

28 U.S.C. § 1292(b).

> To satisfy the conditions of § 1292(b), the moving party must demonstrate that the
> order at issue (1) involves a controlling question of law; (2) offers substantial
> ground for difference of opinion as to its correctness[;] and[] (3) if appealed
> immediately, would materially advance the ultimate termination of the litigation.

Terrell v. Mr. Cooper Grp., Inc., Civ. Action No. 20-0496 (CKK), 2021 WL 2778542, at *3

(D.D.C. July 2, 2021).  For the following reasons, the Court concludes that the plaintiffs have not

met their burden of showing that "an immediate appeal from the [Court's ruling] may materially

advance the ultimate termination of th[is] litigation[,]" 28 U.S.C. § 1292(b), and, accordingly,

the Court must deny the plaintiffs' motion for certification for interlocutory appeal.  See United

States v. Honeywell Int'l Inc., Civ. Action No. 08-0961 (PLF), 2021 WL 2493382, at *2 (D.D.C.

June 18, 2021) (noting that "[i]nterlocutory appeal is only appropriate if all three requirements

are satisfied").

       "To satisfy the third requirement of [§] 1292(b), . . . the moving party must show that

'reversal would hasten or at least simplify the litigation in some material way, such as by

significantly narrowing the issues, conserving judicial resources, or by saving the parties from

needless expense.'" In re Rail Freight Fuel Surcharge Antitrust Litig., Civil Action No. 11-1049

(PLF), 2021 WL 2433737, at *5 (D.D.C. June 15, 2021) (quoting Molock v. Whole Foods Mkt.

Grp., 317 F. Supp. 3d 1, 6 (D.D.C. 2018)).  "Although the movant[s] need not show that reversal

would end the litigation, [they] must identify an impact on the proceeding that is more than merely speculative." Honeywell Int'l Inc., 2021 WL 2493382, at *3 (emphasis in original).

The plaintiffs argue that "an immediate appeal will 'materially advance the ultimate termination of the litigation[,]'" Pls.' Recon. Mem. at 12 (quoting § 1292(b)), because (1) "[a] prompt resolution as to [the p]laintiffs' assertion of privilege by th[e District of Columbia] Circuit [ ] will ultimately advance the litigation by focusing on the actual claims and defenses asserted by the [p]arties in this case[,]" as opposed to the question at issue here, which they claim "has been a sideshow to the litigation[,]" Pls.' Recon. Reply at 13, and (2) the Court's ruling "will have far-reaching consequences for any university student or employee engaged in litigation, who has used his or her university e[-]mail address with an expectation of privacy[,]" id. at 13–14.

Beginning with the plaintiffs' first argument, the Court is not convinced that interlocutory resolution of this issue would "hasten or at least simplify the litigation in some material way[,]" Molock, 317 F. Supp. 3d at 6.  The plaintiffs argue that "prompt resolution" of this issue by the Circuit "will ultimately advance the litigation" because the Court and the parties would be able to "focus[] on the actual claims and defenses asserted by the [p]arties in this case."  Pls.' Recon. Reply at 13.  However, if the question of whether the plaintiffs waived the attorney-client privilege in sending and receiving these e-mails is unrelated to the "claims and defenses asserted by the [p]arties in this case[,]" id., the Court fails to appreciate how resolution of this issue will in any way "hasten or at least simplify the litigation[,]" let alone "in some material way[,]" Molock, 317 F. Supp. 3d at 6.  Cf. APCC Servs., Inc. v. Sprint Commc'ns Co., 297 F. Supp. 2d 90, 100 (D.D.C. 2003) (concluding that interlocutory review of the jurisdictional issue in that case would materially advance the disposition of the litigation because it would "conserve

judicial resources and spare the parties from possibly needless expense . . . in the event that it [wa]s ultimately found that th[e c]ourt lack[ed] jurisdiction to litigate these cases"). Resolution by the Circuit of what the plaintiffs call a "sideshow to th[is] litigation[,]" Pls.' Recon. Reply at 13, would neither "narrow[] the issues[ before the Court], conserv[e] judicial resources, or [ ] sav[e] the parties from needless expense[,]" In re Rail Freight Fuel Surcharge Antitrust Litig., 2021 WL 2433737, at *5 (internal quotation marks omitted). Rather, it appears to the Court that, whether the Circuit were to affirm or reverse the Court's ruling via interlocutory appeal, the progression of this case would remain the same: a post-discovery status conference; summary judgment briefing, if applicable; and trial, if applicable—all regarding the "actual claims and defenses asserted by the [p]arties[,]" Pls.' Recon. Reply at 13. Therefore, the Court concludes that the plaintiffs have not demonstrated that interlocutory appeal of this issue would "hasten or at least simplify the litigation in some material way[,]" Molock, 317 F. Supp. 3d at 6.

Turning to the plaintiffs' second argument, the Court concludes that the potential impact of the resolution of this issue by the Circuit on future cases and other courts is insufficient alone to demonstrate that interlocutory review of this issue would "materially advance this litigation[.]" 28 U.S.C. § 1292(b). The plaintiffs argue that this prong is satisfied because the Court's ruling will have "'far-reaching consequences'" for other litigants, Pls.' Recon. Mem. at 12 (quoting United Mine Workers of Am. 1974 Pension Tr. v. Pittston Co., 793 F. Supp. 339, 347 (D.D.C. 1992)), and "'[r]esolution of this question would also assist many courts in resolving similar disputes[,]'" id. (quoting APCC Servs., 297 F. Supp. 2d at 100). However, the plaintiffs mistakenly construe the applicable law. Although courts have considered whether "[r]esolution of [the] question [at issue] would [ ] assist many other courts in resolving similar disputes[,]" APCC Servs., 297 F. Supp. 2d at 100, as part of the analysis when

considering whether interlocutory review would "materially advance the disposition of the litigation[,]" § 1292(b), none of the cases cited by the plaintiffs support their proposition that the third factor is satisfied by showing only an impact on other cases, see Pls.' Recon. Mem. at 12 (arguing that the third factor "is [ ] satisfied where '[r]esolution of this question would also assist many courts in resolving similar disputes'" (quoting APCC Servs., 297 F. Supp. 2d at 100) (second alteration in original)).  See APCC Servs., 297 F. Supp. 2d at 100 (noting that "[r]esolution of this question would also assist many other courts in resolving similar disputes" as one sentence of a three-paragraph discussion of how "[a]n immediate appeal would conserve judicial resources and spare the parties from possibly needless expense if it should turn out that [the c]ourt's rulings are reversed"); In re Vitamins Antitr. Litig., No. 99-197 TFH, 1285, 2000 WL 33142129, at *2 (D.D.C. Nov. 22, 2000) (concluding that "the [c]ourt [would] allow certification of its . . . [o]rder" in part because "should the . . . Circuit later reverse th[e c]ourt's ruling on the applicable law for jurisdictional discovery, . . . the parties would be subject to much greater delay and relitigation costs" and "this is an important issue and [ ] resolution of this question would assist many courts in resolving similar disputes"); United Mine Workers of Am., 793 F. Supp. at 347 (noting that "[t]he interpretation of the [ ] clause [at issue in that case] ha[d] such far-reaching consequences for the coal industry, the Union, and federal labor law, that an expedited and final resolution of its meaning is imperative" as part of its analysis of whether there were "controlling questions of law as to which there [we]re substantial grounds for difference of opinion[,]" not its analysis of whether resolution would "materially advance the ultimate termination of the litigation" (internal quotation marks and alterations omitted)). Therefore, even if, as the plaintiffs argue, the Court's ruling "could have far-reaching consequences for other students seeking to sue their university for Title IX violations[,]" Pls.'

Recon. Mot. at 12, the plaintiffs' failure to demonstrate that interlocutory review would impact the resolution of <u>this</u> case requires the conclusion that they have failed to satisfy their burden to show that interlocutory review "may materially advance the termination of the litigation" within the meaning of § 1292(b).

Accordingly, the Court concludes that the plaintiffs have not demonstrated that "an immediate appeal from [its] order[s] may materially advance the ultimate termination of the litigation[,]" 28 U.S.C. § 1292(b), and, therefore, it must deny the plaintiffs' motion for certification for an interlocutory appeal. <u>See</u> <u>Honeywell Int'l Inc.</u>, 2021 WL 2493382, at *2 (noting that "[i]nterlocutory appeal is only appropriate if all three requirements are satisfied").

## IV.    CONCLUSION

For the foregoing reasons, the Court must deny the plaintiffs' motion for reconsideration and their motion in the alternative for certification for an interlocutory appeal.

**SO ORDERED** this 19th day of November, 2021.[13]

REGGIE B. WALTON
United States District Judge

---

[13] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.