## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ——————————————————————— ) | |
| JANE DOE 1, <u>et al.</u>, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 18-1391 (RBW) |
| ) | |
| THE GEORGE WASHINGTON ) | |
| UNIVERSITY, <u>et al.</u>, ) | |
| ) | |
| Defendants. ) | |
| ——————————————————————— ) | |

## <u>SEALED MEMORANDUM OPINION</u>

The plaintiffs bring this civil action, using the pseudonyms Jane Does 1 to 5, against the

George Washington University ("GW") and Kyle Renner, a GW employee being sued in his

capacity as GW's General Operations Manager and the plaintiffs' supervisor (collectively, "the

defendants"), alleging violations of the District of Columbia's Human Rights Act,

D.C. Code §§ 2-1401–1404.04, <u>see</u> First Amended Complaint [a]nd Jury Demand ("Am.

Compl.") ¶¶ 116, 123, 133, 140, ECF No. 14, and Title IX of the Education Amendments Act of

1972 ("Title IX"), 20 U.S.C. §§ 1681–88, <u>see id.</u> ¶¶ 149–50, 160; and, as to GW only, negligent

training, supervision, and retention, <u>see id.</u> ¶ 145.  <u>See also</u> <u>Doe 1 v. George Wash. Univ.</u>, 369 F.

Supp. 3d 49 (D.D.C. 2019) (Walton, J.) ("<u>Doe 2019</u>") (granting in part and denying in part the

defendants' motion to dismiss).  Currently pending before the Court is the plaintiffs' renewed

motion to compel.  <u>See</u> Plaintiffs' Renewed Motion to Compel ("Pls.' Mot."), ECF No. 94.

Upon careful consideration of the parties' submissions,[1] the Court concludes that it must deny the plaintiffs' motion.

## I.      BACKGROUND

The Court previously described the relevant factual background in detail in several earlier opinions, see Doe 2019, 369 F. Supp. 3d at 56–62; Doe 1 v. George Wash. Univ., 480 F. Supp. 3d 224 (D.D.C. 2020) (Walton, J.) ("Doe 2020"); Doe 1 v. George Wash. Univ., __ F. Supp. 3d __, Civ. Action No. 18-1391, 2021 WL 5416631 (D.D.C. Nov. 19, 2021) (Walton, J.) ("Doe 2021"), and therefore will not reiterate that information again here.  The Court will, however, briefly discuss the procedural posture pertinent to the resolution of the motion addressed by this Memorandum Opinion.

Discovery in this case began on October 8, 2019.  See Order at 1 (Oct. 9, 2019), ECF No. 37.  On July 2, 2020, the defendants produced a privilege log to the plaintiffs ("the defendants' first privilege log"), see Pls.' Mem. at 4; Defs.' Opp'n at 6, that included assertions of privilege regarding communications between GW's "Office of General Counsel" and GW's "Title IX office, Human Resources office, and Office of Student Rights and Responsibilities" that had occurred beginning "[i]n early March 2018[,]" Defs.' Opp'n at 5.  On December 10, 2020, the parties notified the Court that they were unable to resolve a discovery dispute regarding the defendants' privilege assertions in their first privilege log, see Min. Order (Dec. 10, 2020), and, on December 14, 2020, the Court conducted a teleconference with the parties, during

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiffs' [Redacted] Statement of Points and Authorities in Support of Plaintiffs' Renewed Motion to Compel ("Pls.' Mem."), ECF No. 94-1; (2) the Plaintiffs' [Unredacted] Statement of Points and Authorities in Support of Plaintiffs' Renewed Motion to Compel ("Pls.' Sealed Mem."), ECF No. 96; (3) the Defendants' [Redacted] Opposition to Plaintiffs' Renewed Motion to Compel ("Defs.' Opp'n"), ECF No. 99; (4) the Defendants' [Unredacted] Opposition to Plaintiffs' Renewed Motion to Compel ("Defs.' Sealed Opp'n"), ECF No. 100; and (5) the Plaintiffs' Reply in Support of Plaintiffs' Renewed Motion to Compel ("Pls.' Reply"), ECF No. 101.

which the Court set a briefing schedule for the plaintiffs to file a motion to compel, <u>see</u> Order at 1 (Dec. 15, 2020), ECF No. 73.  On December 21, 2020, the defendants produced a second privilege log to the plaintiffs ("the defendants' second privilege log"), <u>see</u> Pls.' Mem. at 4, and, on December 31, 2020, the plaintiffs filed their first motion to compel, <u>see</u> Plaintiffs' Motion to Compel, ECF No. 75.

On February 3, 2021, the Court conducted a hearing on the plaintiffs' first motion to compel, <u>see</u> Min. Entry (Feb. 3, 2021), and issued an Order directing the defendants to "submit to the plaintiffs and to the Court an updated privilege log providing 'specific, individualized descriptions' of the redacted or withheld information[,]" Order at 1 (Feb. 9, 2021), ECF No. 85 (quoting <u>Feld v. Fireman's Fund Ins. Co.</u>, 991 F. Supp. 2d 242, 248 (D.D.C. 2013)).  The Court also directed the defendants to "submit to the Court for its <u>in camera</u> review unredacted copies of the documents listed in the plaintiffs' motion[.]"  <u>Id.</u> at 2.  On February 23, 2021, the defendants submitted a copy of their revised privilege log to the Court and the plaintiffs ("the defendants' third privilege log").  <u>See generally</u> Defendants' Updated Privilege Log Pursuant to Court's February 9, 2021 Order (Dkt. 85) ("Defs.' 3d Priv. Log"), ECF No. 93.  On February 26, 2021, "in light of the defendants' revisions to their privilege log," the Court denied the plaintiffs' first motion to compel without prejudice and directed the plaintiffs to file a renewed motion to compel.  Order at 1 (Feb. 26, 2021), ECF No. 92.

On March 12, 2021, the plaintiffs filed their renewed motion to compel, <u>see</u> Pls.' Mot. at 1; on March 26, 2021, the defendants filed their renewed opposition, <u>see</u> Defs.' Opp'n at 1; and on April 2, 2021, the plaintiffs filed their renewed reply in support of their motion, <u>see</u> Pls.'

Reply.  On April 28, 2021, the Court conducted a hearing on the plaintiff's renewed motion to compel and took the motion under advisement.  See Order at 1 (May 4, 2021), ECF No. 102.[2]

## II.     STANDARD OF REVIEW

Discovery in civil cases in federal courts is governed by Federal Rules of Civil Procedure 26 through 37.  See Fed. R. Civ. P. 26–37.  Pursuant to Rule 37, a party seeking discovery may move for an order "compelling an answer, designation, production[,] or inspection" from a party who fails to produce requested documents.  Fed. R. Civ. P. 37(a)(3).  Generally, "[t]he party moving to compel discovery has the burden of providing that the opposing party's answers were incomplete[,]" Equal Rts. Ctr. v. Post Props., Inc., 246 F.R.D. 29, 32 (D.D.C. 2007), "[h]owever, a party asserting a privilege or work-product protection bears the burden to establish that the privilege applies[,]" United States v. All Assets Held at Julius Baer & Co., 169 F. Supp. 3d 54, 56 (D.D.C. 2015).  A party meets that burden by "adduc[ing] competent evidence in support of its claims, something beyond conclusory statements, generalized assertions, and unsworn averments of its counsel." Fed. Trade Comm'n v. Boehringer Ingelheim Pharm., Inc., 180 F. Supp. 3d 1, 16 (D.D.C. 2016) (internal quotation marks omitted); see Alexander v. Fed. Bureau of Investigation, 192 F.R.D. 42, 45 (D.D.C. 2000) ("[T]he party asserting the attorney-client privilege . . . must demonstrate the applicability of the privilege by way of affidavits or other competent evidence.").

---

[2] On November 19, 2021, the Court issued a Memorandum Opinion and Order, denying the plaintiffs' motion for reconsideration of the Court's August 17, 2020 Memorandum Opinion and Order.  See Doe 2021, 2021 WL 5416631, at *1; Doe 2020, 480 F. Supp. 3d at 225.  Both the Doe 2020 and Doe 2021 Memorandum Opinions addressed an unrelated issue regarding the plaintiffs' assertion of attorney-client privilege and work-product protection over e-mails sent to and from the plaintiffs' GW-issued e-mail addresses by the plaintiffs and their counsel.  See Doe 2021, 2021 WL 5416631, at *1; Doe 2020, 480 F. Supp. 3d at 225.  On December 20, 2021, the plaintiffs filed a notice advising the Court that, "on December 20, 2021[,] they filed a petition for a writ of mandamus with the District of Columbia Circuit seeking review of the Court's [decisions.]"  Notice Re Petition for Writ of Mandamus at 1, ECF No. 116.  As of the date of the issuance of this Memorandum Opinion, the plaintiffs' petition is still pending resolution by the Circuit.  See In re: Jane Doe 2, et al., Case No. 21-7140 (D.C. Cir.).

### III.   ANALYSIS

The plaintiffs move to compel the defendants "to produce documents that have been withheld or redacted on the basis of privilege[.]"  Pls.' Mot. at 1.  Specifically, they argue that the defendants (1) cannot "assert[] attorney-client privilege and work[-]product" protection with regards to "communications involving non-lawyers[,]" Pls.' Mem. at 7; (2) "ha[ve] waived the attorney-client and work-product privileges by placing specific documents at issue in this case[,]" id.; and (3) have "waived the privilege under the doctrine of 'subject[-]matter waiver'" by "selectively disclosing some, but not all, of the documents and communications in relation to [the d]efendants' response to [the p]laintiffs' complaints of workplace harassment," id. at 2.  In response, the defendants argue that (1) "the challenged [non-lawyer] communication[s] involve[] confidential attorney-client communications, documents seeking or discussing legal advice, and/or confidential attorney work-product[,]" Defs.' Opp'n at 2–3; (2) the documents are not at issue because their defenses are based on the "actions" that GW took "in responding to reports of inappropriate behavior, not the legal advice received," id. at 2; and (3) they have not "reveal[ed] part of a[ny] privileged communication[,]" id. at 17 (internal quotation marks and emphasis omitted).  For the following reasons, the Court agrees with the defendants that the documents challenged in the plaintiffs' motion are privileged.  The Court will address each of the plaintiffs' arguments in turn.

### A.   Whether the Attorney-Client Privilege Applies to the Non-Lawyer Communications

First, the plaintiffs assert that the "[d]efendants have withheld and/or redacted numerous documents as privileged and [protected by the] work[-]product protection that involve non-lawyers at GW who were responsible for responding to [the p]laintiffs' complaints."  Pls.' Sealed Mem at 16.  According to the plaintiffs, "[a]lthough most of the communications were

carbon[-]copied to a lawyer at [the] Office of General Counsel, this does not make the communications privileged" when "there is no evidence that the communications . . . were directed by lawyers in the Office of General Counsel or were intertwined with legal analysis." Id.  In response, the defendants argue that "virtually all of the e[-]mails in this category are part of e[-]mail threads between GW staff and counsel where the original e[-]mail was either sent directly to a GW attorney[] or was an e[-]mail from a GW attorney, and the e[-]mail communications deal with the working group's discussion of the same topic on which the attorney was being consulted."  Defs.' Opp'n at 23.  Thus, the defendants assert, these "communications are privileged[.]"  Id. at 24.

Having reviewed the documents in camera, the Court has sorted them into three categories—A, B, and C—which it will discuss in turn.

### 1.  Category A[3]

The first category of documents are (1) e-mails sent by GW employees to attorneys in GW's Office of General Counsel, asking for advice from attorneys in that office, and (2) direct responses from the attorneys.  For the following reasons, the Court concludes that the communications in Category A are privileged.

The attorney-client privilege "protects confidential[4] communications between clients and their attorneys made for the purpose of securing legal advice or services."  Fed. Trade Comm'n v. Boehringer Ingelheim Pharm., 180 F. Supp. 3d 1, 16 (D.D.C. 2016).  In other words, the privilege "applies to a confidential communication between attorney and client if that communication was made for the purpose of obtaining or providing legal advice to the client."

---

[3] The following documents are included in this category: (1) GWD_003119; GWD_003175; GWD_003203; GWD_003313; and GWD_003419, which comprise the same e-mail thread; (2) GWD_004349; GWD_004353; and GWD_004358, which comprise the same e-mail thread; (3) GWD_007783; and (4) GWD_009136.

[4] The plaintiffs do not challenge the confidential nature of the communications.

In re Kellogg Brown & Root, Inc., 756 F.3d 754, 757 (D.C. Cir. 2014); see Fisher v. United States, 425 U.S. 391, 403 (1976) ("Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged.").  Furthermore, the privilege applies to "business organizations[,] . . . in light of 'the vast and complicated array of regulatory legislation confronting the modern corporation,' which require[s] corporations to 'constantly go to lawyers to find out how to obey the law[.]'"  In re Kellogg, 756 F.3d at 757 (quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)).  However, "a corporate client should not be allowed to conceal a fact by disclosing it to the corporate attorney."  Neuder v. Batelle Pacific Nw. Nat. Lab., 194 F.R.D. 289, 293 (D.D.C. 2000).

For each of the redacted or withheld communications in Category A, "one of the significant purposes of the [communication] was to obtain or provide legal advice," and thus "the privilege [ ] appl[ies]."  In re Kellogg, 756 F.3d at 760.  First, the redacted portions of GWD_003004,[5] GWD_003119, GWD_003175, GWD_003203, GWD_003313, and GWD_003419—documents which all constitute the same thread of e-mails, see Defs.' 3d Priv. Log at 91–93, 98, 102–03, 106–07—concern GW employees providing information to attorneys in GW's Office of General Counsel for the purpose of obtaining "legal advice . . . in responding to student complaints[,]" id. at 98, and attorneys providing advice based on that information. Second, in GWD_004349, GWD_004353, and GWD_004358, Toi Carter, an Associate General Counsel in GW's Office of General Counsel, provides legal advice "regarding [an] e[-]mail from

---

[5] The Court notes that, in their memorandum, the plaintiffs discuss GWD_3004, see Pls.' Mem. at 15–16, although that document is not included in the list of documents referenced in the section of their memorandum addressing the "non-lawyer communications[,]" id. at 16.  To the extent that the plaintiffs intended to challenge the defendants' claim of privilege as to GWD_3004, the Court concludes that GWD_3004 belongs in Category A because it is part of the same chain of e-mails as GWD_003119, GWD_003175, GWD_003203, GWD_003313, and GWD_003419. See Mannina, 2019 WL 1993780, at *14 ("The attorney-client privilege exists 'to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him [or her] to give sound and informed advice.'" (quoting Upjohn Co., 449 U.S. at 390)).

Jane Doe 5[,]" and GW employees "discuss[]" and provide further information to Carter in order to obtain further legal advice regarding the e-mail.  Id. at 123–24.  Third, in GWD_7783, Christine Anthony, the Director of GW's Office of Student Rights and Responsibilities, seeks legal advice from Carter "regarding draft changes to the Student Code of Conduct[.]"  Id. at 164. And, finally, in GWD_009136, Vickie V. Fair, Assistant Vice President of Equal Employment Opportunity and Employee Relations in GW's Human Resources Office, "repeat[s] legal advice received from [ ] Carter regarding [the] procedure for [the] handling of complaints about E[merson] Jones[, the alleged perpetrator of the harassing conduct at issue in this case]."  Id. at 81.  Because "[c]ommunications from attorney to client are shielded if they rest on confidential information obtained from the client[,]" In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984), or if they are "made for the purpose of seeking or obtaining legal advice[,]" United States v. Naegele, 468 F. Supp. 2d 165, 169 (D.D.C. 2007), these communications are privileged. Accordingly, the Court concludes that the documents in Category A are privileged.

## 2.  Category B[6]

The second category of documents constitute a chain of e-mails, of which one e-mail is redacted.  In the redacted e-mail, Robyn Jones, GW's Human Resources Director, e-mails Keira Bloore and carbon-copies attorneys from the Office of General Counsel, "referencing [a] previous discussion with counsel regarding complainants about [ ] Jones and complainants working remotely."  Defs.' 3d Priv. Log at 82–83.  Accordingly, the redacted e-mail refers to both communications from GW employees to counsel and communications from counsel to GW employees.  Because the attorney-client privilege "protects communications from the attorney to the client or the client to the attorney that would reveal directly or indirectly the substance of the

---

[6] The following documents are included in this category: GWD_2857, GWD_2859, GWD_2861, GWD_4289, and GWD_4291, which reflect the same e-mail thread.

client's communications to the attorney in seeking legal advice[,]" Naegele, 468 F. Supp. 2d
at 169 (D.D.C. 2007) (citing Upjohn, Co., 449 U.S. at 390–92; Mead Data Ctl., Inc. v. U.S.
Dep't of Air Force, 566 F. 2d 242, 254 n.25 (D.C. Cir. 1977)), the redacted e-mail is privileged.

### 3.   Category C[7]

The third category of documents is comprised of e-mail communications between GW
staff members that were carbon-copied to attorneys in GW's Office of General Counsel.  In these
communications, the GW staff members are forwarding messages to the Office of General
Counsel, however, the documents do not contain responses from the attorneys, if that even
occurred.  Nonetheless, for the following reasons, the Court concludes that these messages are
also privileged.

"The attorney-client privilege exists 'to protect not only the giving of professional advice
to those who can act on it but also the giving of information to the lawyer to enable him [or her]
to give sound and informed advice.'"  Mannina v. District of Columbia, 2019 WL 1993780,
at *14 (D.D.C. May 16, 2019) (quoting Upjohn Co., 449 U.S. at 390).  So long as the
"'confidential communication[ was] made between [the] client[] and the[] attorney[] . . . for the
purpose of securing legal advice' or providing legal advice[,]" the privilege applies.  Id. (quoting
In re Lindsey, 158 F.3d 1263, 1267 (D.C. Cir. 1998)).  When a communication has multiple
purposes, e.g., "a legal purpose and a business purpose[,]" "courts apply the 'primary purpose'
test to determine whether the communication is privileged."  Fed. Trade Comm'n v. Boehringer
Ingelheim Pharms., 892 F.3d 1264, 1267 (D.C. Cir. 2018).  This Circuit has instructed that

---

[7] The following documents are included in this category: (1) GWD_3551; GWD_4031 and GWD_4077, which
contain the same e-mail thread; (2) GWPRIV_000007, GWPRIV_000014, GWPRIV_000016, GWPRIV_000019,
GWPRIV_000024, GWPRIV_000027, GWPRIV_000031, GWPRIV_000035, GWPRIV_000038,
GWPRIV_000041, GWPRIV_000044, and GWPRIV_000047, which contain the same e-mail thread;
(3) GWD_7585; GWD_7602; GWD_7616; and GWD_7623, which contain the same e-mail thread; and
(4) GWD_5165 and GWD_5176, which also contain the same e-mail thread.

"courts applying the primary purpose test should not try 'to find <u>the</u> one primary purpose' of a communication[,]" but rather "should determine whether obtaining or providing legal advice was <u>one of</u> the significant purposes of the attorney-client communication." <u>Id.</u> (internal quotation marks omitted) (emphasis in original).

Here, the Court finds that "obtaining . . . legal advice was one of the significant purposes[,]" <u>id.</u> (emphasis omitted), of these communications.  The Court begins with GWD_3551.  As the defendants note in their third privilege log, GWD_3551 shows that Jennifer Alexander-Smith, an employee in GW's Office of Student Rights and Responsibilities, "request[ed] advice on [March 29, 2018,] from . . . Carter" and other GW employees in "the working group [ ] about potential actions against [ ] Jones[,]" and, on March 30, 2018, Danielle Lico, the Associate Dean of Students, Administrative Services and Senior Advisor, responded, "with carbon[-]cop[ies] to [ ] Carter[] and the working group."  Defs.' 3d Priv. Log at 108.  Even though this communication does not reflect a reply from Carter to Alexander-Smith's or Lico's inquiries, one purpose of both Alexander-Smith's and Lico's e-mails was "securing legal advice[,]" <u>In re Lindsey</u>, 158 F.3d at 1267, regarding "potential actions against [ ] Jones[,]" Defs.' 3d Priv. Log at 108.  Thus, the privilege applies.

Similarly, the other communications in Category C contain information being provided by GW employees to counsel for the purpose of securing legal advice.  GWD_4031 and GWD_4077 reflect a request from Alexander-Smith for "advice . . . from [ ] Carter and the working group" regarding Jane Doe "2's complaints about [Jones,]" and responses from Lico and Rory Muhammad, Director and Title XI Coordinator at GW's Office for Diversity, Equity and Community Engagement, with Carter carbon-copied.  <u>Id.</u> at 121.  GWPRIV_00007, GWPRIV_000014, GWPRIV_000016, GWPRIV_000019, GWPRIV_000024,

GWPRIV_000027, GWPRIV_000031, GWPRIV_000035, GWPRIV_000038,
GWPRIV_000041, GWPRIV_000044, and GWPRIV_000047 contain "[c]omments in response
to [an] e[-]mail from [ ] Bloore[, Title IX Investigator at GW's Office for Diversity, Equity and
Community Engagement,] seeking advice from [Carter] and other[ GW employees] on [a] draft
of [a] letter to be sent to [the] complainants[.]"  Id. at 85, 87–89, 94–100.  GWD_7585,
GWD_7602, GWD_7616, and GWD_7623[8] reflect a "[d]iscussion with [ ] Carter[,]" Anthony,
Lico, Muhammad, and Alexander-Smith "in response to [an] e[-]mail from [ ] Anthony seeking
advice from counsel and others regarding Jane Doe 5['s] . . . case."  Id. at 153–56.  Finally,
GWD_005165 and GWD_5176 reflect a "[d]iscussion in response to" a request from Alexander
"seeking advice from counsel and others regarding [a] draft e[-]mail response to Jane Doe 2."
Id. at 125; see id. at 126.  For each of these e-mails, similar to GWD_3551, one purpose was to
secure legal advice from GW's Office of General Counsel regarding actions that should be taken
in response to the student complaints.  Therefore, the Court concludes that these communications
are also privileged.

　　　　As this Circuit noted, "the privilege carries costs[,]" including that "potentially critical
evidence may be withheld from the factfinder[,]" however, "our legal system tolerates those
costs because the privilege is intended to encourage full and frank communication between
attorneys and their clients and thereby promote broader public interests in the observance of law
and the administration of justice."  In re Kellogg, 756 F.3d at 764 (internal quotation marks
omitted).  For the above reasons, the Court concludes that protecting from disclosure the

---

[8] As the defendants note in their third privilege log, GWD_007585 and GWD_007623 reflect, inter alia, a redacted
e-mail from Anthony to Alexander, dated July 16, 2018, at 1:29:55 p.m., that was separately produced to the
plaintiffs—without redactions—in the document labelled GWD_007602.  See Defs.' 3d Priv. Log at 152, 160.
Because the defendants "withdr[e]w[ their] claim of privilege with respect to the redacted e[-]mail" from Anthony to
Alexander, the Court need not address whether this e-mail is privileged.  Accordingly, the Court's discussion of
GWD_007585 and GWD_007623 is limited to the defendants' other redactions in those documents.

documents identified by the plaintiffs as "non-lawyer communications[,]" Pls.' Mem. at 16
(capitalization omitted), advances the objectives of the privilege and, therefore, these documents
need not be disclosed.

**B.      Whether the Defendants Have Waived the Attorney-Client and Work-Product
         Privileges by Placing the Communications from GW's Office of General Counsel at
         Issue in This Case**

Second, the plaintiffs argue that the defendants have waived both the attorney-client and
work-product privileges by placing the communications from the Office of General Counsel at
issue.  According to the plaintiffs, "[b]ecause GW has placed at issue its response to [the
p]laintiffs' complaints of sexual harassment, it has waived the [attorney-client] privilege with
respect to documents and communications which relate to [its] decision to terminate Jones in
response to [the p]laintiffs' complaints[,]" including communications to and from "its Office of
General Counsel[.]"[9]  Pls.' Sealed Mem. at 10.  In response, the defendants argue that the
communications with GW's Office of General Counsel are not "at issue" because they "ha[ve]
never pled as an affirmative defense that [they] relied on [the] advice of counsel[, nor have they]
defended [the p]laintiffs' claims on the adequacy of any investigation by counsel or on anything
that transpired between [GW] and counsel."  Defs.' Opp'n at 9.  For the following reasons, the
Court concludes that the defendants have not waived the attorney-client privilege and the

---

[9] Based on this argument, the plaintiffs seek production of unredacted copies of six categories of documents:
(1) "Staff/Hiring Termination Notes" made by defendant Renner, without which the plaintiffs argue that they
"cannot fully and adequately address GW's affirmative defenses," see Pls.' Sealed Mem. at 8–11; (2) the "case
activity logs" prepared by GW's Title IX office, see id. at 11–14; (3) the adjudication report regarding a "hearing
relating to Jane Doe 5" before a "student-composed hearing panel[] established by GW's Office of Student Rights
and Responsibilities[,]" for which the plaintiffs claim that GW's "Office of General Counsel edited, modified,
and/or provided input as to the outcome[,]" id. at 13–14; (4) "draft responses to [the p]laintiffs [prepared by GW's
Office of General Counsel] regarding [the plaintiffs'] complaints and discussions on how GW should respond to [the
p]laintiffs' complaints[,]" id. at 14–15; (5) "communications and/or a draft of a letter to be sent to the [p]laintiffs
relating to [their] complaints[,]" id. at 15; and (6) "documents, which all relate to GW's response to the [p]laintiffs'
complaints of sexual harassment[,]" and which were withheld as being a "response to student concerns[,]" id. at 15–
16 (capitalization omitted).

work-product doctrine by placing their communications with GW's Office of General Counsel at issue in this case.

"Under the doctrine of 'implied' or 'at issue' waiver, 'the attorney-client privilege is waived when the client places otherwise privileged matters in controversy.'" Minebea Co., Ltd. v. Papst, 355 F. Supp. 2d 518, 522 (D.D.C. 2005) (quoting Ideal Elec. Sec. Co. v. Int'l Fidelity Ins. Co., 129 F.3d 143, 151 (D.C. Cir. 1997)).  This doctrine serves to "prevent 'an abuse of the privilege,' that is, to prevent the confidentiality protected by the privilege from being used 'as a tool for manipulation of the truth-seeking process[.]'" Id. (quoting In re Sealed Case, 676 F.2d 793, 807 (D.C. Cir. 1982)).  Accordingly, when a party "partially discloses the allegedly privileged information in support of its claim against another," it can no longer "assert[] the privilege as a basis for withholding from its opponent the remainder of the information which is necessary to defend against the claim." Ideal Elec. Sec. Co., 129 F.3d at 151; see also United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991) (A party "may not use the privilege to prejudice his[, her, or its] opponent's case or to disclose some selected communications for self-serving purposes.").

### 1.  The Applicable Standard for At-Issue Waiver

As an initial matter, the parties dispute the applicable standard for "at[-]issue" waiver of the attorney-client privilege.  The plaintiffs argue that "the at-issue waive[r] doctrine prevents GW from shielding documents and communications that relate to GW's response to [the p]laintiffs' complaints." Pls.' Reply at 3 (emphasis added).  In support of this argument, the plaintiffs cite Hearn v. Ray, 68 F.R.D. 574 (E.D. Wash. 1975), see Pls.' Mem. at 5, where the United States District Court for the Eastern District of Washington held that at-issue waiver occurs when "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected

information at issue by making it relevant to the case; and (3) application of the privilege would

have denied the opposing party access to information vital to his[, her, or its] defense[,]" <u>Hearn</u>,

68 F.R.D. at 581.

     As the defendants note, <u>see</u> Defs.' Opp'n at 12, the applicability of the standard applied

in <u>Hearn</u> in this circuit remains an open question, as the Circuit has not addressed the applicable

standard for at-issue waiver of privileged information.  However, the Second and Third Circuits

have explicitly rejected <u>Hearn</u>'s standard.  <u>See</u> <u>Rhone-Poulenc Rorer Inc. v. Home Indem. Co.</u>,

32 F.3d 851, 864 (3d Cir. 1994) ("Relevance is not the standard for determining whether or not

evidence should be protected from disclosure as privileged, and that remains the case even if one

might conclude the facts to be disclosed are vital, highly probative, directly relevant[,] or even go

to the heart of an issue."); <u>In re Cty. of Erie</u>, 546 F.3d 222, 229 (2d. Cir. 2008) ("We agree with

its critics that the <u>Hearn</u> test cuts too broadly" because "[a] mere indication of a claim or defense

certainly is insufficient to place legal advice at issue" and "[n]owhere in the <u>Hearn</u> test is found

the essential element of reliance on privileged advice in the assertion of the claim or defense in

order to effect a waiver.").  Similarly, at least two decisions from this district have declined to

follow <u>Hearn</u>, noting the ramifications of applying a broad relevance standard to privileged

information.  <u>See, e.g.</u>, <u>U.S. Equal Empt. Opportunity Comm'n v. George Wash. Univ.</u>, 502 F.

Supp. 3d 62, 87 (D.D.C. 2020) ("Courts have rejected the notion that merely pleading a claim or

affirmative defense to which privileged communication might be relevant puts protected

information at issue such that it is discoverable."); <u>Trustees of Elec. Workers Local No. 26</u>

<u>Pension Tr. Fund v. Tr. Fund Advisors, Inc.</u>, 266 F.R.D. 1, 13 (D.D.C. 2010) (stating that the

court "believe[d] that the . . . Circuit would agree with the decisions of the Second and Third

Circuits and with the courts and academics that have criticized <u>Hearn</u> and would conclude that a party must put the advice in issue before [he,] she[, or it] forfeits the privilege").

The Court agrees with the decisions that have criticized <u>Hearn</u>'s standard as too broad. "[P]rivileged information may be in some sense relevant in any lawsuit" and, therefore, the "mere indication of a claim or defense [ ] is insufficient to place legal advice at issue." <u>In re Cty. of Erie</u>, 546 F.3d at 229 (emphasis omitted). Concluding that "confidentiality may be waived depending on the relevance of the communication [would] completely undermine[]" the purpose of the attorney-client privilege, <u>i.e.</u>, "to assure a client that he or she can consult with counsel in confidence[.]" <u>Rhone-Poulenc Rorer Inc.</u>, 32 F.3d at 864. Accordingly, the Court agrees with the Second and Third Circuits that "[r]elevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant[,] or even go to the heart of an issue." <u>Id.</u> Rather, "the essential element" of at-issue waiver is "reliance on the [privileged] advice of counsel" in the assertion of a "claim or defense[.]"[10] <u>Id.</u>

---

[10] The plaintiffs argue that, "[v]ery recently though, this court affirmed <u>Hearn</u> as the appropriate standard." Pls.' Reply at 2 n.1 (citing <u>Davenport v. Djourabchi</u>, No. CV1602445ABJRMM, 2020 WL 7042813, at *12 (D.D.C. Nov. 30, 2020)). However, the plaintiffs fail to acknowledge that, in <u>Davenport</u>, the court was applying District of Columbia law, rather than federal common law regarding privilege, as it must apply here given the plaintiffs' Title IX claims. <u>See</u> Fed. Evid. R. 501 ("The common law—as interpreted by [the] United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court[,]" although, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). But even if <u>Davenport</u> were applicable to this case, it would not mandate the disclosure of the communications withheld by the defendants.

In <u>Davenport</u>, the court noted that "the [District of Columbia] Court of Appeals discussed the <u>Hearn</u> standard with approval in <u>Wender[ v. United States Automobile Ass'n</u>, 434 A.2d 1372, 1374 (D.C. 1981),]" and "continued to follow the waiver rules set forth in <u>Wender</u>, even after the Third Circuit announced the <u>Rhone</u> standard[.]" <u>Davenport</u>, 2020 WL 7042813, at *12. However, as the court in <u>Davenport</u> noted, the District of Columbia Court of Appeals has "repeatedly stressed that [its] waiver rules are fundamentally rooted in 'fairness[,]'" and "[f]airness thus limits the breadth of <u>Hearn</u>'s relevance prong." <u>Id.</u> Accordingly, "[w]hile a party cannot assert the privilege as <u>both</u> a sword and a shield, a party clearly remains free to forego a claim or defense to safeguard their privilege[.]" <u>Id.</u> at *14. Here, the defendants' clear statements that they "have not advanced as a 'defense' the results of any 'investigation' by counsel or otherwise[,]" Defs.' Opp'n at 13, acknowledge that they are not advancing any "claim
(continued . . .)

at 863; see George Wash. Univ., 502 F. Supp. 3d at 86 (quoting In re Cty. of Erie, 546 F.3d 222, 228 (2d Cir. 2008)) ("[A] party places privileged material at issue by 'assert[ing] reliance on an attorney's advice as an element of a claim or defense.'")).

### 2. Whether the Defendants Placed the Communications at Issue by Asserting Affirmative Defenses 5 and 6

Having concluded that the appropriate waiver standard is whether the defendants "place[d] privileged material at issue by 'assert[ing] reliance on an attorney's advice as an element of a claim or defense[,]'" George Wash. Univ., 502 F. Supp. 3d at 86 (internal quotation marks omitted), the Court next turns to whether the defendants have waived the privilege in this case.  In arguing that the defendants "have placed their response[—]or lack thereof[—]to [the p]laintiffs' complaints of sexual harassment and sexual assault at issue[,]" Pls.' Reply at 1, the plaintiffs cite two affirmative defenses pled by the defendants in their Answer, see id.: (1) Affirmative Defense 5, in which the defendants plead that they "exercised reasonable care to prevent and correct allegedly harassing behavior" and (2) Affirmative Defense 6, in which the defendants plead that they "were not negligent in their treatment of [the p]laintiffs' complaints about Jones or other alleged misconduct[,]" Answer at 18.  Specifically, the plaintiffs argue that the communications between GW's Office of General Counsel and its employees "all relate to GW's response to [the p]laintiffs' complaints of sexual harassment, which GW placed at issue in this case by pleading it as an affirmative defense."  Pls.' Mem. at 7.

However, as correctly noted by the defendants, see Defs.' Opp'n at 10, in order to place privileged communications at issue, the asserting party must have "based a claim or defense

_____

(. . . continued)
or defense[,]" Davenport, 2020 WL 7042813, at *14, that relies upon the communications with the Office of General Counsel that are sought by the plaintiffs.  Accordingly, the Court concludes that the applicability of the fairness standard recognized in Davenport would not support finding a waiver of the privilege when the defendants have explicitly denied asserting a defense based on otherwise privileged communications.

16

upon the attorney's advice." In re Kellogg Brown & Root, Inc., 796 F.3d 137, 147 (D.C. Cir. 2015). Here, neither Affirmative Defense 5 nor Affirmative Defense 6 are "based . . . upon[,]" id., protected communications. Rather, Affirmative Defenses 5 and 6 contend that the defendants "exercised reasonable care to prevent and correct allegedly harassing behavior" and "were not negligent in their treatment of [the p]laintiffs' complaints about Jones or other alleged misconduct." Answer at 18. These affirmative defenses do not indicate any connection to the communications between GW's Office of General Counsel and other GW employees, let alone that these defenses are "based . . . upon" those communications. See In re Kellogg, 796 F.3d at 147.

        Furthermore, although Affirmative Defenses 5 and 6 might indicate that the communications with the Office of General Counsel were why the defendants "exercised reasonable care" and "were not negligent[,]" Answer at 18, the plaintiffs have not identified, see generally Pls.' Mem.; Pls.' Reply, and the Court is unaware of, any such argument having been presented by the defendants to date, see generally Answer. To the contrary, the defendants have asserted that they are not relying on either actions taken by GW's Office of General Counsel or any internal investigation that was conducted pursuant to guidance provided by GW's attorneys. See Defs.' Opp'n at 9 (representing that GW "has never pled as an affirmative defense that it relied on advice of counsel, nor has it defended [against the p]laintiffs' claims [based] on the adequacy of any investigation by counsel or anything that transpired between [GW] and counsel"); id. at 13 (representing that the defendants "have not advanced as a 'defense' the results of any 'investigation' by counsel or otherwise"). Rather, according to the defendants, their "affirmative defenses are based solely on the actions [they] took to address and correct alleged harassment, such as by offering schedule adjustments, work-from-home arrangements,

[n]o-[c]ontact [o]rders, counseling, explanation of complaint procedures, and [the] removal of Jones from the workplace." Defs.' Sealed Opp'n at 9 (emphasis in original). Accordingly, in light of this clear statement from the defendants that they are not relying on any actions taken in response to advice provided by counsel or any internal investigation that involved the privileged communications with the Office of General Counsel, the Court concludes that Affirmative Defenses 5 and 6 do not place any action by GW's Office of General Counsel "at issue" in this case.[11]

Concluding that the defendants have waived the privilege despite their explicit statements disavowing any reliance on the privileged information would improperly undermine the privilege and discourage clients from seeking legal advice because there would be no "sense of certainty or assurance that the [privileged] communication will remain confidential." Trustees of Elec. Workers, 266 F.R.D. at 12 (citation omitted). Accordingly, and for the above reasons, the Court concludes that the defendants have not placed the communications with GW's attorneys at issue and, therefore, have not waived the attorney-client privilege.

---

[11] In opposition to the defendants' position, the plaintiffs also argue that "[c]ourts routinely apply the at-issue waiver doctrine to Title VII cases where the defendant asserts as an affirmative defense that it investigated complaints of sexual harassment and took reasonable corrective actions[,]" citing ten out-of-circuit district court cases. Pls.' Reply at 2. However, none of these ten cases support the application of the "at issue" waiver doctrine to this case, because, in each of the cases, the defendant relied, at least in part, on the adequacy of an investigation into the plaintiff's allegations of harassment in asserting its defenses to the plaintiffs' claims. See, e.g., Harding v. Dana Transp., Inc., 914 F. Supp. 1084, 1096 (D.N.J. 1996) (concluding that an investigation conducted by the defendant's counsel was "at issue" because the defendant had "attempted to utilize the results of [the] investigation [ ] as a defense to liability under Title VII"); Brownell v. Roadway Package Sys., Inc., 185 F.R.D. 19, 25 (N.D.N.Y. 1999) (concluding that the defendant "waived its right to invoke the privilege by asserting the adequacy of its investigation as a defense to [the p]laintiffs' claims of sexual harassment" when it argued that "it 'fully and fairly' investigated [the p]laintiff's allegations while objecting to the production of statements obtained in the course thereof"). In contrast, here, as the defendants have asserted, they "have not advanced as a 'defense' the results of any 'investigation' by counsel or otherwise." Defs. Opp'n at 13. Accordingly, none of the cases cited by the plaintiffs support their claim that the defendants have waived the privilege by placing their communications with the Office of General Counsel at issue.

**C.**      **Whether the Defendants Have Waived the Attorney-Client Privilege by Selectively Disclosing Privileged Information**

Finally, the plaintiffs argue that, "by selectively disclosing some, but not all, of the documents and communications in relation to [the d]efendants' response to [the p]laintiffs' complaints of workplace harassment, [the d]efendants have waived the privilege under the doctrine of 'subject[-]matter' waiver." Pls.' Mem. at 2.  In response, the defendants argue that they have not waived the privilege because they "ha[ve] not disclosed the substance of any attorney-client communication" and "[a] waiver based on 'selective disclosure' occurs only when a 'party reveals part of a privileged communication in order to gain an advantage in litigation.'" Defs.' Opp'n at 16-17 (quoting In re Sealed Case, 676 F.2d at 818) (emphasis omitted).  The Court agrees with the defendants.

Selective disclosure results in the waiver of the privilege because "the purpose of the attorney-client privilege is to protect the confidentiality of attorney-client communications in order to foster candor within the attorney-client relationship" and "[d]isclosure is inconsistent with confidentiality[.]" In re Sealed Case, 676 F.2d at 818.  Accordingly, selective disclosure only results in waiver when a "party reveals part of a privileged communication[.]" Id. (emphasis added).

Here, the plaintiffs make no allegation that the defendants have released portions of privileged communications. See generally Pls.' Mem.; Pls.' Reply.  Rather, the plaintiffs argue that the defendants have "selectively disclose[d] information relating to" "their response to [the p]laintiffs' complaints[.]" Pls.' Sealed Mem. at 11.  However, without any allegation that the defendants have actually "reveal[ed] part of a privileged communication[,]" In re Sealed Case, 676 F.2d at 818, there is no basis for the Court to determine that selective disclosure has

19

occurred.  Therefore, the Court concludes that the defendants have not waived the attorney-client privilege by selectively disclosing confidential communications.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court concludes that it must deny the plaintiffs' motion to compel.[12]

**SO ORDERED** this 18th day of May, 2022.[13]

REGGIE B. WALTON
United States District Judge

---

[12] The plaintiffs' motion also sought production of materials that had been withheld pursuant to the Family Educational Rights and Privacy Act ("FERPA").  See Pls.' Mot. at 1.  On May 6, 2021, the Court issued an Order resolving this issue and directing the defendants to "follow the procedures outlined in the Court's October 25, 2019 Order, ECF No. 39, to produce to the plaintiffs the information protected by the" FERPA.  Order at 1 (May 6, 2021), ECF No. 103.  Accordingly, this issue is now moot.

[13] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.